JOHN RANTA v. SUPREME TENT, KNIGHTS OF THE MACCABEES.[1]

March 30, 1906.

Nos. 14,629—(203).

**Life Insurance.**

Where, in an action to recover on a life insurance policy, the court charged that the statement of deceased as to his health was a warranty, it is competent for the jury to consider the admissions of the officers of the insurance order as to the cause of death. In this case the evidence is *held* sufficient to justify the jury's verdict for the beneficiary.

**Errors in Charge to Jury.**

An insurance order as a defendant in a suit to enforce a life insurance policy can complain only of such errors on the part of the trial court, in charging that statements concerning health made in an application were representations of good faith and honest judgment and not warranties of actual fact, as were covered in its exceptions in the trial court and its assignments of error upon appeal.

**Answers in Application.**

In this case the issues were framed, the case was tried, and except the statement as to the health of deceased the court charged the jury on the theory that such statements were representations. The only exception taken at the trial, and the only specific part of the charge assigned as error on appeal, is based on the refusal of the court to charge the jury, at request of the insurer, that the statement by the applicant as to the good

[1]Reported in 107 N. W. 156.

health of his mother was a warranty. It is *held* that the applicant did not insure the conformity of his opinion with actual fact, but warranted only his bona fide belief and good judgment; that the charge of the court was correct, and that the testimony justified the verdict of the jury against the insured. Rupert v. Supreme Court U. O. F., 94 Minn. 293, 102 N. W. 715, followed and applied.

**Evidence.**

This appeal involves only the sufficiency of the evidence to justify the verdict with respect to all other statements in the application, including the denial of advice to change residence. That testimony is *held* sufficient, especially in view of the circumstances attending the execution of the application.

Action in the district court for St. Louis county to recover $1,000 upon a life insurance policy. The case was tried before Dibell, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*S. T. & Wm. Harrison* and *L. C. Harris,* for appellant.

*Miller & Clapp,* for respondent.

JAGGARD, J.

This was an action to recover on an insurance policy. In the fall of 1901 a deputy of the Supreme Tent, Knights of the Maccabees, organized a tent or lodge of Maccabees at Hibbing, Minnesota. On the evening of November 25, 1901, the prospective members were examined and admitted to membership. There were twenty nine applicants, all Finlanders, among them being the plaintiff and respondent herein, the beneficiary under the policy, and his son Victor Ranta, upon whose life the policy was issued. The applications were all made out, and the men were all examined that evening, through an interpreter. The deceased, so far as this appeal is concerned, and most of the other applicants, were unable to speak English. The medical examiner was unfamiliar with the Finnish language. Accordingly the questions were translated into the Finnish language for the applicants, and the answers in the Finnish language translated into English for the doctor. Part of the application was never read to the deceased. The doctor filled out the answers to the questions, which exceeded one hundred in number.

Deceased did not look over, nor examine, the application after it was made out, and it was not read over to him. The application of Victor Ranta was accepted, and a policy for $1,000 issued on January 3, 1902. His father, John Ranta, plaintiff and respondent herein, was the beneficiary. On April 12, 1902, the said Victor Ranta died, according to the proofs of death, from "probably pulmonary tuberculosis." Proofs of death were duly made, the defendant refused to pay the loss, and the plaintiff thereafter brought this action to recover.

The defendant set up as a defense that the deceased made a written application to defendant for the policy or certificate of insurance sued on, in which, to induce defendant to issue such certificate, were made, among others, the following statements and representations, viz.: (1) That at the time of making said application he was in good health; (2) that he never changed, or had been advised to change, his residence or occupation on account of his health; (3) that he had typhoid fever fifteen years prior to making said application, and that this was the only sickness he had ever had; (4) that he did not have a cough habitually; (5) that he had never had spitting or coughing of blood; (6) that his mother was alive, forty five years old, and in good health; (7) that no member of his family or near relative ever had consumption or any hereditary disease; (8) that no member of his household was affected during the two years preceding the signing of said application. The defendant's answer claimed that every one of these statements were untrue, and were known by Victor Ranta to be untrue, at the time of making same, and were made with the intent to induce defendant to issue and deliver said certificate of insurance, and to cheat and defraud defendant. It is also claimed that at the time of making the application, and for a long time prior thereto, deceased had been afflicted with consumption.

The issues were tried to a jury, which brought in a verdict for the plaintiff. The defendant contends that the verdict was not justified by the evidence, and that the court erred in denying defendant's motion for judgment, or, in default of that, for a new trial. These errors are based upon the theory of the defendant that all of the statements made by the insured were by the terms of the contract itself warranties, and, unless they were strictly true, that the policy is void and of no effect.

1. In his charge to the jury the trial court treated the statement in the application that the deceased was then in good health as a warranty, and charged the jury that there could be no recovery upon the benefit certificate if that statement was false. The instruction was as favorable as the insurance order could possibly have asked. Upon the testimony appearing in the record the jury was justified in finding against the insurance order on this issue. The applicant passed defendant's medical examination. There was abundant testimony to the effect that deceased had not been sick for five years, up to three or four days before he died; that during the summer and fall he was in his usual good health and worked steadily. The jury was also entitled to weigh the effect of the admissions of defendant's own officers. Its physician investigated the cause of the death shortly after the event, and reported that the insured died of "influenza or la grippe, which was epidemic then." "There was nothing suspicious about his last illness, it was only of short duration." The same cause of death was given by other officers of the lodge to which he belonged.

2. As to other statements, the court charged that the defendant was entitled to fair and honest answers, and that if the answers to these questions were not true, and the deceased knew that they were not true, and answered them for the purpose of deceiving and defrauding the defendant insurance order, then the beneficiary could not recover. No exception was made as to the exact form of this instruction. Taken as a whole, the charge of the court was sufficient in law as a direction to the jury that the answers to the other questions were regarded as warranties only of the bona fide belief and judgment of the applicant. It is not necessary in this case to consider at any length the general subject of when statements are representations and when they are warranties in the strict sense. The pleadings were framed and the trial conducted on the theory that the statements by the insured in this case were representations or warranties of good faith.

The only request made to the court to charge the jury by defendant's counsel was that the statement as to the health of the mother of the deceased was a warranty. This the court refused to give and charged that if, as a matter of fact, the mother was not in good health, and the applicant so knew, and made that statement falsely with intent to de-

ceive and defraud, then there could be no recovery on the policy. The exception to this refusal was the only one taken to the charge. It is the only one assigned here as error. The statement concerning the mother's health is therefore the only one which raises the question concerning a warranty of coincidence with fact or a representation of good faith. See Perine v. Grand Lodge, 48 Minn. 82, 50 N. W. 1022; Ætna Ins. Co. v. Rehlaender (Neb.) 94 N. W. 129.

We quite agree with counsel for the defendant in his argument that the parties to the contract had the right and power to warrant the truth of their statements, and that the failure of the truth of warranties avoids a life insurance policy. Accordingly, when the warranty is of fact, like the age of the applicant, he insures the literal truth of his statement (Taylor v. Grand Lodge A. O. U. W., 96 Minn. 441, 105 N. W. 408) ; but, if we assume that the applicant warranted an expert opinion as to his mother's health, he did not thereby insure the coincidence of his statement with fact but only his honest judgment. Any other rule would be obviously bad logic. It would be solemn nonsense to hold that an ordinary applicant insures the exact reality of physical conditions and causes at a time when the greatest pathologists might differ, or even when they might be impossible of definite determination. This entire subject was considered at length in Rupert v. Supreme Court U. O. F., 94 Minn. 293, 102 N. W. 715. That case decided adversely to the defendant this point, except as to the sufficiency of the evidence. The charge of the trial court accordingly contained no error. Upon the evidence the trial court properly submitted this question to the jury.

The defendant relies upon the fact that the applicant's mother died of consumption two weeks (for present purposes) after the application was made, and of the corroborating testimony of the physician that he had treated the mother for consumption for many months prior to the date of the application, and that she was confined to her bed five or six weeks in her last illness. There was testimony that she had been on her deathbed five days when the application was signed. The credibility of the testimony of the doctor was for the jury. Moreover, there was testimony that the woman "did her work and moved around as any woman might do" in a house in which were a large family and many boarders; that at times she would be in bed for a week, and then up

and about; and that "last summer she was in a pretty good condition." It was also a question for the jury whether the doctor's diagnosis of consumption was communicated to the family before the application had been made.

3. The applicant answered "No" to the inquiry:

> Have you ever changed or been advised to change your residence or occupation on account of health?

Because of the history of the case in the trial court and of the absence of assignments of error here, to which reference has previously been made, the only question presented for consideration as to that statement is whether or not the testimony justified the submission to the jury of the applicant's good faith in so answering that interrogation. The defendant's doctor testified that the applicant had come to him complaining of a cold, and that he (the doctor) then said to him that he

> Ought to get out of this country; it was too cold for him; that he ought to go where it was warmer, drier, and more rare atmosphere.

To this the applicant replied that he did not have money to go away. The applicant never changed residence or occupation on account of his health.

This apparently single inquiry, calling for one answer, in reality consisted of two questions. One of them the applicant answered correctly. His beneficiary might as well insist that his answer was proper as the author of the ambiguity that it was improper. Giving the question, unfair in form as it was, the most favorable construction, the matter was properly submitted; for, in view of all the circumstances affecting the testimony of that doctor which it is unnecessary here to detail, its credibility was for the jury. Moreover, the circumstances attending the execution of the application rendered this peculiarly a case in which the jury was the only proper tribunal to determine the good faith and honest judgment of the applicant in making this and other statements.

It was said in Rupert v. Supreme Court, supra: "There are also many instances in which courts may properly see that complicated and ambiguous qualifications and conditions of applications and policies do

not operate as a snare and sacrifice form for justice. The purpose of warranties is to prevent and not to perpetrate fraud. It would be obviously unreasonable and unjust to allow insurance companies to habitually accept 'average risks' by lowering the medical examination to that level and then to permit them to defeat their policies as occasion might arise by insisting that the insured had failed in his insurance of the truth of some insignificant detail having no bearing on good faith or on hazard or of the conformity of an honest opinion with fact."

It would be a work of supererogation to detail the evidence as to the other questions which was, we are clearly of opinion, sufficient to justify the trial court in submitting to the jury the good faith of all the answers which the court held not to be warranties which were presented by defendant's motion.

Order affirmed.