(April 16, 1910.)

## VICTOR R. RASICOT, Respondent, v. ROYAL NEIGHBORS OF AMERICA, a Corporation, Appellant.

[108 Pac. 1048.]

FRATERNAL BENEFIT INSURANCE—WARRANTIES AND REPRESENTATIONS—WAIVER OF BREACH OF WARRANTY—OPINIONS AS REPRESENTATIONS—PUBLIC POLICY—"SOUND HEALTH" DEFINED—"PERSONAL AILMENT" DEFINED—EVIDENCE—ADMISSION OF PROOFS OF DEATH—STATEMENTS TO THE JURY.

(Syllabus by the court.)

1.   Where an applicant for fraternal benefit insurance specifically warrants the literal truth of the answers given to the questions submitted, the statements made in the application are treated in law as warranties and not as mere representations.

2.   The warranty as to the truth of an answer which by its nature expresses only the opinion or judgment of the applicant should not extend further than to insure the honesty and good faith of the party answering the question, and that it was in truth and in fact his honest opinion or judgment.

3.   Where a fraternal benefit society received an application from a woman for insurance which warranted the literal truth of the answers given by her, and she represented and at the time honestly believed that she was not pregnant, when in fact and in truth she was, and the contract provided that the society would not become liable in such a case and that it would not consider such an application until at least two months after confinement, and the society collected and received dues, assessments and premiums from the insured for a period of nearly five years thereafter, during which time the applicant was in good health, the insurance society will be held to have waived the right to insist on a breach of the contract for the falsity of the answer.

4. Where a local camp of a fraternal benefit society receives and collects the dues and assessments and insurance premiums from its members and transmits them to the officers of the superior or head organization, which issues the benefit certificates, and has supervision and right of expulsion of members, the local camp should be regarded and treated as the agent of the superior or head department of the society.

5. It is contrary to sound public policy and detrimental to the best interests of society at large to allow a fraternal benefit society to issue to an applicant a benefit certificate, and thereafter continuously collect and receive from the applicant his dues and assessments for a number of years, and induce him to continue his payments and keep up his membership and dues, under the belief that his savings are being devoted to the purchase of protection for his family and dependent ones, and then after his death to allow the society to repudiate the contract, on the ground that the policy never went into effect because of some temporary cause or disability which existed at the time of the delivery of the policy, and of which the applicant had no knowledge and which was wholly obviated and did not in any manner contribute to the cause of death, increase the risk or lessen the life expectancy of the applicant, and which cause or condition would not have avoided the policy or been a breach of the contract had it occurred after the contract went into force and operation.

6. An agreement or stipulation in a contract of insurance made with a married woman that the policy shall not go into effect unless it is delivered to her "while in sound health" is not violated by reason of the applicant being pregnant at the time of the delivery of the policy.

7. A statement made by a married woman who applies for insurance in a fraternal benefit society that she has not consulted with a physician "in regard to a personal ailment" within the last seven years does not cover a single attendance by a physician upon the applicant some three years prior thereto when she was confined and gave birth to a child. Confinement in childbirth is not a "personal ailment" within the meaning of such a provision in the contract.

8. In an action for recovery on a life insurance certificate, it is error for the trial court to exclude the proofs of death which have been furnished by the beneficiary, where the same are offered in evidence on the trial by the insurance society.

9. Where an amended answer has been filed in a case which omits and abandons certain affirmative defenses pleaded in the original answer, the trial court should not permit the counsel for the plaintiff in his opening statement to read and comment upon the defenses contained in the original answer, and which have been

omitted and abandoned in the answer on which the case is to be tried.

APPEAL from the District Court of the First Judicial District (now the Eighth Judicial District), for the County of Bonner. Hon. W. W. Woods, Judge.

Action by plaintiff to recover on an insurance of benefit certificate. Judgment for plaintiff and defendant appealed. *Affirmed.*

Edwin McBee, for Appellant.

The answers in the application for the benefit certificate herein sued on are warranties. (*Beard v. Royal Neighbors,* 53 Or. 102, 99 Pac. 83, 19 L. R. A., N. S., 789; *Hoover v. Royal Neighbors,* 65 Kan. 616, 70 Pac. 595; *Sinon v. Royal Neighbors,* 135 Ill. App. 599.)

As a warranty is in the nature of a condition precedent to the validity of a policy, and must be literally true, if the fact warranted is not true, there is a breach of warranty. It follows that a breach of warranty will avoid the policy. (3 Cooley's Briefs on the Laws of Insurance, 1950, and cases cited.)

In view of the general principle that the materiality of the fact is wholly unessential in the case of a warranty, it is readily deduced that where there is a breach of warranty the policy is avoided, though the statements on which the breach is predicated is in no way material to the risk. (3 Cooley's Briefs on the Law of Insurance, 1951; 3 Joyce on Insurance, sec. 1962; *Beard v. Royal Neighbors, supra, Hoover v. Royal Neighbors, supra; McDermott v. Modern Woodmen,* 97 Mo. App. 636, 71 S. W. 833; *Price v. Phoenix Mutual Life Ins. Co.,* 17 Minn. 497 (Gil. 473), 10 Am. Rep. 166; *Peterson v. Des Moines Life Assn.,* 115 Ia. 668, 87 N. W. 397; *National Union v. Arnhorst,* 74 Ill. App. 482; *Cerys v. State Ins. Co.,* 71 Minn. 338, 73 N. W. 849; *Schane v. Met. Life Ins. Co.,* 76 App. Div. 271, 78 N. Y. Supp. 582; *Aloe v. Mutual Reserve Fund Life Assn.,* 147 Mo. 561, 49 S. W. 553; *Supreme Lodge v. McLaughlin,* 108 Ill. App. 85.)

A breach of warranty is fatal to the policy, though the insured had no knowledge of the falsity constituting the breach, and did not intend to deceive the insurer. (3 Cooley's Briefs on the Law of Insurance, 1954; May on Insurance, sec. 156; 3 Joyce on Insurance, sec. 1964; 1 Bacon on Benefit Societies, sec. 197; *Standard Life & Accident Ins. Co. v. Sale,* 121 Fed. 664, 57 C. C. A. 418, 61 L. R. A. 337; *Alabama Gold Life Ins. Co. v. Johnston,* 80 Ala. 467, 59 Am. Rep. 816, 2 So. 125; *Continental Life Ins. Co. v. Rogers,* 119 Ill. 474, 59 Am. Rep. 810, 10 N. E. 242; *O'Connell v. Supreme Conclave,* 102 Ga. 143, 66 Am. St. 159, 28 S. E. 282; *Conn. Life Ins. Co. v. Pyle,* 44 Ohio St. 19, 58 Am. Rep. 781, 4 N. E. 465; *McGowan v. Supreme Court I. O. F.,* 104 Wis. 173, 80 N. W. 603; *Leonard v. State Mut. Life Assur. Co.,* 24 R. I. 7, 96 Am. St. 698, 51 Atl. 1049; *Peterson v. Des Moines Life Assn.,* 115 Ia. 668, 87 N. W. 397.)

The statement by an applicant that she had not consulted a physician regarding any personal ailment within seven years preceding her application, and which was warranted to be true, and which said answer was untrue, constituted a breach of warranty relieving the defendant from liability, without regard to the character of the ailment for which the physician was consulted. (*Beard v. Royal Neighbors, supra; Hoover v. Royal Neighbors, supra; Metropolitan Life Ins. Co. v. McTague,* 49 N. J. L. 587, 9 Atl. 776; *Cobb v. Assn.,* 153 Mass. 176, 25 Am. St. 619, 26 N. E. 230, 10 L. R. A. 666; *McDermott v. Modern Woodmen, supra,* and cases therein cited; *Caruthers v. Kansas Mut. L. Ins. Co.,* 108 Fed. 487.)

Even if the answers in the application were, under a proper construction of the contract, misrepresentations, then they avoid the benefit certificate, if material to the risk. (*Aetna Life Ins. Co. v. France,* 94 U. S. 561, 24 L. ed. 287; *Alabama Gold Life Ins. Co. v. Johnston, supra; Campbell v. New England Mut. Life Ins. Co.,* 98 Mass. 381; *Price v. Phoenix Mut. Life Ins. Co.,* 17 Minn. 497, 10 Am. Rep. 166.)

Reading and commenting, over defendant's objection, on defendant's original answer, which had been withdrawn, was improper and prejudicial, and is, therefore, ground for

reversal. (*Giffen et ux. v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545; *Burke v. McDonald,* 3 Ida. 296, 29 Pac. 98; *State v. Harness,* 10 Ida. 18, 76 Pac. 788; *Smith v. Smith,* 106 N. C. 498, 11 S. E. 188; *Riley v. Town of Iowa Falls,* 83 Ia. 761, 50 N. W. 33; *Taft v. Fiske,* 140 Mass. 250, 54 Am. Rep. 459, 5 N. E. 621.)

The court erred in overruling defendant's objection to the question asked plaintiff as to whether defendant had tendered him the amount of dues and assessments paid by his wife. (*Thompson v. Travelers' Ins. Co.,* 11 N. D. 274, 91 N. W. 75.)

Proofs of death are admissible in evidence, and are *prima facie* proof of the facts stated therein and against the beneficiary and on behalf of the society, the same being admissions by the said beneficiary. (*Ins. Co. v. Newton,* 22 Wall. 32, 22 L. ed. 793; *Home Benefit Assn. v. Sargent,* 142 U. S. 691, 12 Sup. Ct. 332, 35 L. ed. 1160; *Grand Lodge v. Wieting,* 168 Ill. 408, 61 Am. St. 123, 48 N. E. 59; *Walther v. Mutual Ins. Co.,* 65 Cal. 417, 4 Pac. 413; *Modern Woodmen of America v. Van Wald,* 6 Kan. App. 231, 49 Pac. 782; Elliott on Evidence, sec. 2387; Bliss on Insurance, 2d ed., sec. 265.)

B. S. Bennett, for Respondent.

A pleading, or an admission or allegation in a pleading, notwithstanding it has been withdrawn or stricken from the record by amendment, is competent in evidence against the party from whom it proceeded, like any other admission or declaration. (Abb. Trial Brief, Civil Jury Trials, 2d ed., p. 296, and cases cited.)

We believe that in every case cited by appellant where a forfeiture was upheld, the death of the insured was directly connected with, and grew out of some conditions of health covered by the questions, in regard to which the representations and statements of the applicant were made.

When an application is made and approved, there is no duty on the holder of the certificate issued on such application to notify the company of any subsequently discovered evidence of pregnancy. (*Merriman v. Grand Lodge,* 77 Neb. 544, 124

Am. St. 867, 110 N. W. 302, 8 L. R. A., N. S., 983, 15 Ann. Cas. 124.)

Statements in such an application for insurance are merely representations, and not warranties. (*Royal Neighbors v. Wallace*, 73 Neb. 409, 102 N. W. 1020; *Ranta v. Supreme Tent Maccabees*, 97 Minn. 454, 107 N. W. 156; *Rupert v. Supreme Court U. O. F.*, 94 Minn. 293, 102 N. W. 715.)

What constitutes consulting a physician must be construed liberally, and does not include temporary or slight ailments. The insured is entitled to a liberal construction of the language of the application. (25 Cyc. 817-720; *Brown v. Met. Life Ins. Co.*, 65 Mich. 306, 8 Am. St. 894, 32 N. W. 610; *Hann v. National Union*, 97 Mich. 513, 37 Am. St. 365, 56 N. W. 834; *Brown v. Ins. Co.*, 65 Mich. 306, 8 Am. St. 894, 32 N. W. 610; *Pudritzky v. Knights of Honor*, 76 Mich. 428, 43 N. W. 373; *Plumb v. Penn. Mut. Ins. Co.*, 108 Mich. 94, 65 N. W. 611.)

Where there is a reasonable doubt as to whether statements in an application are warranties or representations, the doubt will always be resolved in favor of the insured. (*Price v. Phoenix Mut. Life Ins. Co.*, 17 Minn. 497, 10 Am. Rep. 166.)

If there were no fraudulent representations, and the appellant does not claim there were, and the contract never went into effect, justice and equity would require the defendant to return the premium. Proofs of death were filed, an action was brought, the defendant made no offer to return the money which had been contributed to its fund by the insured. It should then have manifested its election to treat the contract as void. (May on Insurance, 3d ed., sec. 4; *Allen v. Phoenix Assur. Co.*, 14 Ida. 745, 95 Pac. 829; Clement on Fire Ins. 428; *Modern Woodmen v. Vincent*, 40 Ind. App. 711, 80 N. E. 427, 82 N. E. 475, 14 Ann. Cas. 89, and cases cited.)

The appellant compelled the insured to perform her part of the contract in the payment of dues, and it should not be permitted to escape the obligations of the contract on its part, by seeking in after years to avoid the policy, on grounds that have never increased its risk. (*Schreiber v. German-American Hall Ins. Co.*, 43 Minn. 367, 45 N. W. 709; *Fishbeck v. Phenix Ins. Co.*, 54 Cal. 427; *Harris v. Society*, 64 N.

Y. 196; *First Nat. Bank v. Manchester Fire Assur. Co.,* 64 Minn. 96, 66 N. W. 136; *Mee v. Bankers' Life Assn.,* 69 Minn. 210, 72 N. W. 74; *Gray v. Nat. Benevolent Assn.,* 11 Ind. 531, 11 N. E. 477; Kerr on Insurance, p. 308; *Taylor v. Grand Lodge,* 96 Minn. 441, 105 N. W. 408, 3 L. R. A., N. S., 114.)

''The relation between a subordinate lodge of a benefit society and the principal lodge is that of agency.'' (*Modern Woodmen v. Breckenridge,* 75 Kan. 373, 89 Pac. 661, 12 Ann. Cas. 636; *High Court etc. v. Schweitzer,* 171 Ill. 325, 49 N. E. 506.)

## STATEMENT OF FACTS.

The plaintiff commenced this action in the district court to recover upon a benefit certificate for $1,000 issued by the defendant, the Royal Neighbors of America, to plaintiff's wife, Emeline Rasicot. About May 14, 1902, Emeline Rasicot was elected as a beneficiary member of Dewey Camp No. 1037 of the Royal Neighbors of America located at Little Falls, Minn. Under date of April 25th she answered the prescribed list of questions, and made application for a benefit certificate in the society. This application appears to have been witnessed and filed by the Camp recorder on June 4th, and on the same date she was given the medical examination and answered the list of questions submitted by the Camp physician. On June 28th the society issued its benefit certificate for the sum of $1,000, payable to Victor R. Rasicot, husband of the insured. The insured afterward removed to Idaho and transferred her membership to Lakeside Camp No. 2373, located at Sandpoint, Idaho, and thereafter kept up the regular payment of all dues and assessments until the date of her death, February 7, 1907. The beneficiary, Victor R. Rasicot, made the necessary proofs of death and demanded payment on the certificate. The society refused payment, and this action was accordingly instituted. The defendant filed an answer, denying generally the allegations of the complaint and setting up four separate affirmative defenses. The first defense pleaded the by-laws of the society, and the application made by Emeline Rasicot for insurance, and alleged that certain of her answers were false and untrue, and that by

the provisions of the application and benefit certificate she
had warranted the literal truth of every answer given, and
that the policy was therefore void, and never became effective
by reason and on account of the falsity and untruth of her
answers. The second affirmative defense alleged that under
the stipulations and agreements of the application and cer-
tificate it is essential to the validity of the policy or certificate
that it should be delivered to the applicant while she was in
sound health, and that in truth and in fact she was not in
sound health at the time of the delivery of the certificate, and
that therefore the policy never took effect. The third and
fourth defenses are each to substantially the same effect, and
allege that the insured died from a criminal and self-inflicted
abortion and miscarriage, and that under the terms of her
certificate no recovery could be had in such a case. The
defendant subsequently filed an amended answer, containing
more specific denials of the allegations of the complaint, and
later it filed a second amended answer on which the case was
finally tried.

The defendant omitted from this last answer the third
and fourth defenses relating to the charge that the insured
had died from a self-inflicted operation. This answer con-
tained a further allegation as to the falsity of a further ques-
tion propounded by the company and answered by the appli-
cant. The answer as it finally stood alleged that the applicant
had given false and untrue answers to questions 17, 18, 25
(in two particulars), 28, 33-j, 33-v, and 33-l, the questions
and answers being as follows:

"17. Are you now of sound body and mind, in good health,
free from disease or injury, of good moral character, exemp-
lary habits and a believer in a Supreme Being?" "Yes."

"18. Have you within the last seven years, consulted any
physician or physicians in regard to personal ailment? If so,
give dates, ailment and physician or physicians' names and
addresses." "No."

"25. Have you ever had any disease of the following named
organs, or any of the following named diseases or symptoms?:
Fistula." "No."

"25. Have you ever had any disease of the following named organs, or any of the following named diseases or symptoms? Rheumatism?"  "No."

"28. Have you ever had any disease of the urinary or genital organs?"  "No."

"33-j. Is your menstruation regular and healthy?"  "Yes."

"33-v. Have you now or ever had any disease of the breast, ovaries or uterus?"  "No."

"33-l. Are you now pregnant?"  "No."

The application contains the following provision in several different forms and in different paragraphs and subdivisions thereof:

"I have verified each of the foregoing answers and statements, from 1 to 33, both inclusive, adopt them as my own, whether written by me or not, and declare and warrant that they are full, complete and literally true, and I agree that the exact literal truth of each shall be a condition precedent to any binding contract issued upon the face of the foregoing answers, and I hereby constitute and make the officers of the local Camp and of the Royal Neighbors of America, who have aided in making this application, my agents for such purpose.  I further agree that the foregoing answers and statements, together with the preceding declaration, shall form the basis of the contract between me and the Royal Neighbors of America, and are offered by me as a consideration for the contract applied for, and hereby made a part of any benefit certificate that may be issued on this application, or a substitute therefor issued at my request, and shall be deemed and taken as a part of any such certificate.   That this application may be referred to in any said benefit certificate as the basis thereof, and that they shall be construed together as one entire contract; and I further agree that if any answer or statement in this application is not literally true, or if I should fail to comply with and conform to any and all of the laws of said Royal Neighbors, whether now in force or hereafter adopted, that my benefit certificate shall be void."

When it came to the trial the chief controversy revolved about the answer to question 33-l.   On this question special

findings were submitted to the jury, and the questions submitted and the answers thereto are as follows:

"1. State whether or not the deceased, Emeline Rasicot, was pregnant at the time she made application for a policy of insurance with the defendant, to wit, on June 4, 1902.

"Answer: We, the jury, answer Yes.

"2. State whether or not the said decedent, Emeline Rasicot, if you answer that she was pregnant on June 4, 1902, or June 28, 1902, knew of her condition as to pregnancy on either of said dates, and if so, on what date.

"Answer: We, the jury, answer that she did not know her condition on the 4th day of June, 1902, and did not know such condition June 28, 1902."

The jury at the same time returned a general verdict in favor of the plaintiff for the sum demanded by his complaint.

AILSHIE, J. (After Stating the Facts.)—At the outset it must be conceded that under the terms of this contract the answers given by the applicant for insurance are viewed by the law in the nature of warranties rather than as mere representations. (3 Joyce on Insurance, sec. 1944; Bacon on Benefit Societies, sec. 194; *Hoover v. Royal Neighbors of America,* 65 Kan. 616, 70 Pac. 595; *Beard v. Royal Neighbors of America,* 53 Or. 102, 99 Pac. 83, 19 L. R. A., N. S., 798; *Supreme Lodge Knights and Ladies of Honor v. Payne,* 101 Tex. 449, 108 S. W. 1160, 15 L. R. A., N. S., 127.) It has been found as a fact that the insured was pregnant at the time she made application for insurance and at the time the benefit certificate was issued to her. It is also established that she did not know of her pregnancy at the time and that her answer was in good faith and honestly made. Viewing these facts alone, if we should follow the inflexible technical rule of warranties which has been adopted by many courts, the inquiry would end here and we would hold that the breach itself avoided the contract and that the subsequent conduct of the society could not be considered. (Joyce on Insurance, sec. 1970; *McDermott v. Modern Woodmen of America,* 97 Mo. App. 636, 71 S. W. 833; *Hoover v. Royal Neighbors of Amer-*

*ica, supra; Beard v. Royal Neighbors of America, supra;* and authorities above cited.)

We are of the opinion, however, that there are rules of law and principles of equity that must be applied to the insurer as well as to the insured, and that its treatment of the contract for a number of years after the effects and consequences of the breach had disappeared is a subject requiring our consideration. The benefit certificate was issued to the insured on the 28th day of June, and thereafter and on the 25th day of November of the same year she gave birth to twins, both of whom were healthy and normal. No unusual or unfavorable condition of health resulted from her confinement. She continued to be a member of Lakeside Camp No. 2373 located at Sandpoint, and continued the regular payment of dues and assessments from time to time and was in fairly good health until shortly before the date of her death in February, 1907. In the meanwhile, she bore at least one child after the birth of the twins. It should at this point be observed that there is no provision of the contract or policy of insurance which attempts to suspend or avoid the contract after it is once entered into on account of subsequent pregnancy. The provision of the contract confronting us is a stipulation against pregnancy existing at the time of the application for the insurance. It is conceded in this case that the death of the insured did not result from any condition of the insured which existed at the time of making the application or of the issuance of the policy; nor, indeed, is it contended that the pregnancy of the insured at the time of the issuance of the policy in any way contributed to the ultimate cause of death or in any way augmented the subsequent risk or diminished her life expectancy. In the application question 33-1 is followed by a star, and at the foot of the application blank is the following note: "If applicant is pregnant, application will not be accepted by Supreme physician. Examination should be postponed until at least two months after confinement." It appears that under the by-laws, rules and regulations of the society in a case of this kind, the application is withheld

until a period of two months after the confinement of the applicant, and thereupon the physician makes the examination and takes the applicant's answers to the questions, and if they prove satisfactory in other respects, the application is accepted and the certificate is issued.

In this case no fraud was practiced whatever. Although the society contends that the policy never went into effect and that the contract never became binding, still it received and accepted dues and assessments from the insured for a period of more than four years continuously succeeding her confinement and also covering a subsequent period of gestation and confinement, and the society is presumed to have had notice through the local Camp of the existence of the facts and the happening of the contingency which would have avoided the contract. The local camp of which the insured was a member collected and received the dues and assessments from its members, and was charged with the duty of looking after the health and conduct of its members and of expelling or suspending its members for any violation of the laws of the order or breach of their duties as members of the society. The local lodge was, therefore, the agent of the society which issued the benefit certificate, and the appellant after the lapse of more than four years is chargeable with notice of the existence of the condition on the part of the insured which would have avoided the risk and prevented the contract becoming effective and operative. (*Modern Woodmen v. Breckenridge,* 75 Kan. 372, 89 Pac. 661, 12 Ann. Cas. 636; *Order of Foresters v. Schweitzer,* 171 Ill. 325, 49 N. E. 506, 7 L. R. A. 262, 12 Ann. Cas. 638; *Supreme Lodge K. of H. v. Davis,* 26 Colo. 252, 58 Pac. 595; *Modern Woodmen of America v. Lane,* 63 Neb. 89, 86 N. W. 943; *Modern Woodmen of America v. Coleman,* 68 Neb. 660, 94 N. W. 814, 96 N. W. 154; *Supreme Lodge v. Wellenvoss,* 119 Fed. 671, 55 C. C. A. 287; *Pringle v. Modern Woodmen of America,* 76 Neb. 384, 107 N. W. 756, 113 N. W. 231.) Under these facts and circumstances the doctrine of waiver should be applied to the society.

In *Supreme Lodge K. of H. v. Davis, supra,* the court said: "'In a mutual benevolent order, composed of a supreme lodge

and subordinate lodges, an officer of a subordinate lodge charged with the duty of notifying the members of assess-ments made by the supreme lodge for the purpose of paying insurance certificates of deceased members, and of collecting and forwarding to the supreme lodge such assessments, is an agent of the supreme lodge, notwithstanding a rule or by-law of the order recites that such officer in collecting and forward-ing assessments shall be the agent of the members of the sub-ordinate lodge, and the supreme lodge is charged with all knowledge possessed by the agent in making the collection.''

In *Trotter v. Grand Lodge Legion of Honor,* 132 Iowa, 513, 109 N. W. 1099, 7 L. R. A., N. S., 561, 11 Ann. Cas. 533, the court said: ''The rule that courts will give effect to any act or circumstance from which it may fairly be argued that the insurer has waived the right to strict and literal performance by the insured, or upon which an estoppel against forfeiture may be founded, applies to fraternal or lodge insurance. And whether a waiver of forfeiture of a certificate of insurance will be found in any particular case depends, not on the intention of the insurer, against whom it is asserted, but on the effect which its conduct or course of business has had upon the in-sured, and this rule is applicable where the insurer acts under a mistake.''

In *Pringle v. Modern Woodmen of America,* 76 Neb. 384, 113 N. W. 231, Pringle held a benefit certificate which contained a clause to the effect that it should become null and void if the insured should at any time be convicted of a felony. While holding the certificate, the insured was convicted of felony and sentenced to the state penitentiary, where he was confined for about six months and died. The beneficiary sued on the con-tract to recover the amount of the policy. It appeared that the insured had continuously kept up the payment of his dues and assessments. The supreme court of Nebraska, in speak-ing through Mr. Justice Barnes, said: ''The local camp and its clerk being the agents of the association, the conclusive presumption, in the absence of fraud, is that they seasonably communicated the fact of Pringle's conviction to the head

camp. Indeed, the clerk testified that the governing body knew of the fact, and his statement stands unchallenged, except by the evidence of one C. W. Hawes, the head clerk of the association. A like state of facts has often been held to amount to waiver of a similar forfeiture clause.''

The state is vitally interested in the thrift and frugality of its citizens, and in encouraging the citizen in providing for his family and looking to their protection and comfort in the event of his demise. To allow him, when acting honestly and from the most laudable motive, to be led on under the belief that he is devoting his savings to the purchase of a legacy for his dependent ones, and then when the beneficiary comes to make demand for that paltry recompense to tell him that the courts, the final arbiters of his rights, will not listen to the equity of the case, would be doing violence to the principles of fair dealing, and would be likewise contrary to the best interests of the public at large which we term public policy. Had the insured been in any manner advised that her policy was not in force, she would perhaps have procured one that would have been valid, and this would have been to the benefit of her family and in the interest of society as well, and the state itself must feel an interest in having her take such precautions, and in that sense the construction of such contracts becomes a matter of public policy. The insurer cannot suffer half so much from such a policy, and such a construction as the individuals interested, and society at large must in the end of necessity suffer from the cold-blooded, technical rule that seems to prevail in so many jurisdictions. This ought to be the rule in order to prevent organizations soliciting membership, receiving insurance applications and accepting dues and assessments for years, and then, after the applicant is perhaps too old to procure insurance elsewhere, tell the insured that he made a false answer in some one of the numerous questions propounded by the society, and that consequently his policy has never been in force. Such a contract is clearly violative of the interests of society at large and of the welfare of its citizens and ought to be discouraged.

The more than two hundred questions contained in one application blank run the gamut of the applicant's ancestry from his grand ancestors down to date, and ask him about every disease and pathological condition for which the medical world has been able to invent a name, and then if forsooth he misses a guess on any one of them, he is chargeable with expert knowledge and warranting the correctness of his answers and must lose his protection on the venture of a guess. In such a game the insured has only a chance in hundreds, and the result must follow that he only thinks he is insured.—it amounts to mental insurance and nothing more. The insurance society in such case could exist for the sole and only purpose of collecting dues and assessments with no insurance liability.

Some courts have held, and we think the rule sound, that notwithstanding the stipulation of warranty in such contracts, answers which merely express the opinion or judgment of the applicant cannot be classed among the facts, the truth of which is insured by the applicant,—that he only warrants his honesty and good faith as to such answers. (*Rupert v. Supreme Court U. O. F.*, 94 Minn. 293, 102 N. W. 715; *Ranta v. Supreme Tent of Maccabees*, 97 Minn. 454, 107 N. W. 156; *Royal Neighbors of America v. Wallace*, 73 Neb. 409, 102 N. W. 1020; *Royal Neighbors of America · v. Wallace*, 5 Neb. (Unof.) 519, 99 N. W. 256.) "It would be solemn nonsense," says the supreme court of Minnesota in *Ranta v. Supreme Tent of Maccabees*, "to hold that an ordinary applicant insures the exact reality of physical conditions and causes at a time when the greatest pathologists might differ or even when they might be impossible of definite determination." This rule seems to us more in consonance with reason and justice than the rule of strict literal warranty contended for by appellant.

The application contained the stipulation that any certificate which might be issued to the applicant "shall be delivered to me while in sound health and in pursuance of the by-laws of the order." It is also contended that the insured was not in "sound health" at the time of delivery because

of pregnancy. Pregnancy is not *per se* a condition of "unsound" health, nor is it a "disease" or "ailment" within the meaning of those terms used in this application and policy. The term "sound health" has been frequently defined by the courts, and so far as we are advised it has never been held that this term used in an insurance policy or certificate covered every slight ailment or indisposition of health of a temporary character which does not tend directly to shorten the life or undermine the constitution of the insured. (*Packard v. Metropolitan Life Ins. Co.,* 27 N. H. 1, 54 Atl. 287; *Morrison v. Wis. Odd Fellows' Mutual Life Ins. Co.,* 59 Wis. 162, 18 N. W. 13; *Brown v. Metropolitan Life Ins. Co.,* 65 Mich. 306, 8 Am. St. 894, 32 N. W. 610; *Manhattan Life Ins. Co. v. Carder,* 82 Fed. 986, 27 C. C. A. 344; 7 Words and Phrases, 6554.) So far as we are informed, this term of itself and standing alone has never been held to cover or include a case of pregnancy. Appellant must, therefore, rest its case on the falsity of the representation that the insured was not pregnant.

Appellant attempted to show that the answer to question 18 was false for the reason that the insured had consulted a physician within the period of seven years immediately preceding her application. On this point there was a sharp conflict in the evidence except with reference to one visit by a physician, who it is admitted attended her on April 5, 1899, the date of her last previous confinement. The appellant had notice that the applicant was a married woman, and that she had already borne five children and that she had been confined on April 5, 1899, which was only about three years prior to this application. It might have assumed that either a physician or a midwife attended her on this confinement. The attendance, however, of a physician at the time of a normal case of confinement is clearly not a "consultation" or treatment of a "personal ailment" of the female confined. Childbirth is a physiological fact which occurs in the regular course of nature, and neither signifies nor entails disease or ailment in the usual and ordinary use of those terms.

On the trial of the case the plaintiff introduced the physician who attended the insured during her last sickness, and examined him as to the nature of her illness and the cause of death. He testified that she died following an operation performed by him, and testified to the general nature and character of her condition and the cause for which the operation was performed. He said: "The object of it was to remove the right tube and the right ovary and drain for an abscess in the pelvis." He also testified to signing the death proofs, and identified the paper containing the proofs made by him. The defendant thereafter offered to introduce in evidence the death proofs made by this physician. The plaintiff objected and the objection was sustained by the court. This ruling is assigned as error. The court should have admitted this exhibit in evidence. It is a uniform rule almost without exception that such proofs are admissible when offered by the insurer. (3 Elliott on Evidence, secs. 2386–2389; *Insurance Co. v. Newton,* 22 Wall. 32, 22 L. ed. 793; *Beard v. Royal Neighbors of America,* 53 Or. 102, 99 Pac. 83, 19 L. R. A., N. S., 798.) The defendant was not prejudiced by the exclusion of this exhibit. The exhibit has been preserved in the record and is before us. Answer No. 11 is the particular portion of the exhibit that defendant offered in evidence, and to the rejection of which counsel took their exception. It is an answer to the question: "State the remote cause of death." The answer given by the physician is as follows: "Exposure and cold. Patient had a recto vaginal fistula which may predisposed to the pelvic inflammation 1st symptoms, severe abdominal pains, tenderness of whole abdomen, vomiting and constipation, Tympanitis then located pelvic cellulitis uterus became filled was forming in right side filling up Douglas pouch." This answer was substantially the same as that given by the doctor when on the witness-stand. His explanation at length as given on the witness-stand was clearer and more complete than the answer given in the death proofs. This is evidently due, however, to the fact that he was asked more questions. The purpose of this proof should not be lost sight of. The defendant was not seeking to prove that

the answers given in the death proof showed that the insured had died from a disease or malady or cause not covered by the policy of insurance. The purpose must have been either to impeach or discredit the physician who was then testifying, or, what is more probable, to show by inference that the insured had fistula at the time she made application for insurance. Death took place, however, nearly five years after the application was made, and while she was afflicted with fistula at the time of her death, the inference that she had this trouble at the time she made application for insurance would be very remote and at most only *prima facie*. These facts were substantially all before the jury, and we are satisfied that the appellant was not prejudiced by the erroneous ruling of the court.

Appellant assigns as error the action of the court in permitting the plaintiff to introduce evidence showing that defendant had never paid back or tendered the dues and assessments that had been paid on this benefit certificate. We do not think the admission of this evidence was prejudicial or reversible error. Of course, it was immaterial in view of the fact that the defendant had not tendered it into court or pleaded a return or tender of the premiums paid.

When the case was called for trial and prior to the introduction of any evidence, the attorney for the plaintiff read the pleadings to the jury and thereupon proceeded to make a statement to the jury, and in doing so commented upon the allegations contained in the first answer of defendant, whereupon counsel for defendant made objection to any comment being made on the original answer. This objection was overruled. Further along in counsel's statement, he again made reference to that part of the defendant's original answer in which it had alleged that the insured came to her death by a self-inflicted criminal operation. Counsel for defendant again objected and the objection was overruled by the court. This action of counsel for the plaintiff and the ruling of the court is assigned as error. Without going into any discussion of the evils and dangers of such a practice, it is sufficient to say that we do not approve of the same, and that the court should

have sustained the objection and admonished counsel to refrain from commenting on any allegations contained in the pleadings that were not then at issue and on which the case was to be tried. (*Owens, Lane & Dyer Co. v. Pierce*, 5 Mo. App. 576; *Stratton v. Nye*, 45 Neb. 619, 63 N. W. 928; *Giffen v. City of Lewiston*, 6 Ida. 231, 55 Pac. 545.) We cannot reverse the judgment in this case, however, on account of this error for the following reason: Counsel for appellant have not preserved in their statement and bill of exceptions any statement that was made by the counsel for the plaintiff, which it claims was prejudicial, and nowhere in the record does it appear what language counsel used. The comment made by counsel may have in no respect been prejudicial, and in the absence of any positive showing in the record as to what it was, we must assume that nothing prejudicial to the appellant's rights was said in this connection.

Many other errors are assigned on the admission and rejection of evidence and the giving and refusing to give instructions to the jury. It is unnecessary to give all these assignments of error specific and detailed consideration here, for the reason that what we have already said covers and disposes of the entire case. We find no error that will either require or justify a reversal of the judgment in this case. The judgment is eminently just, and the defense was highly technical and wholly unconscionable.

The judgment is *affirmed*, with costs in favor of the *respondent*.

Sullivan, C. J., and Stewart, J., concur.

Petition for rehearing denied.