LADIES OF MACCABEES OF THE WORLD v. KENDRICK.

(Court of Civil Appeals of Texas. Texarkana. March 11, 1914. Rehearing Denied March 19, 1914.)

1. INSURANCE (§ 819*)—MUTUAL BENEFIT INSURANCE—MISREPRESENTATIONS—TRUTH OF ANSWERS.

In a statement made by decedent in applying for a mutual benefit certificate, she was asked whether she was then in good health, and whether she had ever changed or been ordered to change her residence on account of health, after which she was asked "have you consulted or been attended by any physician during the past 5 years?" which she answered, "No," following which were questions as to what was the cause for each consultation or attendance, and whether decedent had fully recovered from each illness. Held, that the fact that decedent was attended by a physician at a natural childbirth within five years did not make her answer to the quoted question false; that not being an illness or ailment within the meaning of the question.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2006, 2007; Dec. Dig. § 819.*]

2. INSURANCE (§ 723*)—MUTUAL BENEFIT INSURANCE—STATEMENTS—FALSITY.

A negative answer to a question asked insured, "Have you ever had a surgical operation performed or received treatment in a hospital, sanitarium, retreat, or any public or private institution for the treatment of physical or mental disease?" was not made false by proof that insured had been operated on by a physician by surgical instruments at her home.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*]

3. INSURANCE (§ 723*)—MUTUAL BENEFIT INSURANCE—STATEMENTS—FALSITY.

A comma will not be supplied by construction after the word "performed" in order to make false a negative answer to a question asked insured, "Have you ever had a surgical operation performed or received treatment in a

hospital * * * or any public or private institution for the treatment of physical or mental disease?" where the proof showed that insured had been operated on at her home.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Action by William D. Kendrick against the Ladies of the Maccabees of the World. From a judgment for plaintiff, defendant appeals. Affirmed.

Appellee was the beneficiary in a certificate issued by appellant insuring the life of his wife in the sum of $1,000. The wife having died, and appellant having refused to pay the certificate, this suit was brought by appellee to enforce the contract. Appellant contended that the deceased had "guaranteed and warranted" that all the statements made by her in her application for membership in the order, and in reply to questions propounded to her by its medical examiner, were true, whereas, certain of same were false, and that therefore, by the terms of the contract, it was not liable. Of the statements so made by deceased, it alleged that those made in reply to the following questions were false: (17) "Are you in good health at the present time? Answer: Yes." (19) "Have you consulted or been attended by any physician during the past 5 years? Answer: No." (25) "Is there anything to your knowledge or belief in your physical condition, family or personal history or habits, tending to shorten your life, which is not distinctly set forth above? Answer: No." (28) "Has any of your family or near relatives, etc., ever had rheumatism? Answer: No." (32) "Have you now or have you ever had since childhood any of the following diseases: Neuralgia, headache (severe or frequent), piles, discharge from ear, or any other disease, ailment, or injury? Answer: No." (41) "Are you regular in your monthly period? Answer: Yes." (42) "Have you any vaginal discharge or uterine hemorrhage, or disease of the uterus or its appendages, or is any such disease suspected by you? Answer: No." (44) "Have you felt any enlargement or tenderness in the abdomen? Answer: No." (45) "Have you ever had a surgical operation performed or received treatment in a hospital, sanitarium, retreat, or other public or private institution for the treatment of physical or mental disease? Answer: No." (35) "Has labor always been natural? Answer: Yes."

The trial was before the court without a jury. The court made and filed findings of fact as follows:

"(1) The court finds from the evidence in this case that defendant order, on the 17th day of December, 1910, issued and delivered to Mrs. Florence Kendrick its benefit certificate No. 172815, in which it agreed to pay to plaintiff, her husband, the sum of $1,000 in the event of her death while a member of the order, provided her death should occur before she reached the age of 50 years; that plaintiff's wife died on the 26th day of October, 1912, she being then of the age of 37 years; that the immediate cause of her death was a secondary hemorrhage, resulting from an operation performed on her for an ovarian trouble, the operation having been performed by Drs. Bell and Smith; that the trouble for which she was operated on developed after the certificate was issued to her, and only a few months prior to her death; that proper proofs of her death were furnished to defendant in due time, and same were accepted by defendant as being sufficient; that plaintiff's wife paid all dues and assessments that were levied against her by defendant order up to the time of her death, and at the time of her death she was a member in good standing.

"(2) The court further finds that in the application for membership signed by plaintiff's wife it is, among other things, provided: 'I hereby warrant that I have read and do fully understand all the foregoing statements, questions, and answers thereto, as contained on pages 1, 2, and 3 of this application, whether in my own handwriting or that of another person, and all of the said statements, questions, and answers thereto are hereby made part of my application and of my contract for benefit membership in the order; and I do hereby expressly warrant that all the statements and answers contained in this application, on pages 1, 2, and 3 thereof, are true and absolutely correct in every particular; and I do hereby agree and consent that the benefit certificate in said order hereby applied for shall be issued to me upon the strength of the warranties herein contained, and in consideration of this application, which is made a part of my contract with said order; and I further agree that any breach of any of the warranties herein contained shall render my benefit certificate null and void, and all payments made by me shall be forfeited to the order in case of such voidance.' And in the certificate it was, among other things, provided: 'This certificate is issued upon the express understanding and agreement that all the statements of any kind or description contained in her said application for membership and in her medical examination are guaranteed and warranted by said member to be true and correct in every particular.'

"(3) The court further finds that in the application for membership plaintiff's wife was, among others, asked these questions: 'Are you in good health at the present time?' to which she answered, 'Yes.' (18) 'Have

you ever changed or been ordered to change your residence on account of health? (If so, give particulars.)' To which she answered, 'No.' (19) 'Have you consulted or been attended by any physician during the past 5 years? (If so, give the date of the beginning, and give the duration of every illness.)' To which she answered, 'No.' (20) 'What was the cause of each consultation or attendance?' To which she made no answer. (21) 'Have you fully recovered from each illness?' To which she made no answer. (22) 'Give full names and residence of each physician thus consulted within the past five years.' To which she made no answer. In the twenty-sixth question contained in the application, plaintiff's wife was asked, among other things, to state the number, age, and condition of health of her children, and in answer she stated that she was the mother of four children, Marvin, of the age of 16 years, Grace, of the age of 14 years, Circy, of the age of 10 years, and Forrest, of the age of 3 years, all of whom were living, and that their health was good. The court finds that the health of plaintiff's wife was good at the time she made the application; that at the birth of her last child, Forrest, which occurred on the 6th day of November, 1907, Dr. T. J. Bell, a practicing physician, attended her. The birth was a natural one, and the doctor only saw her the one time. The evidence does not show whether he was called at the time by Mrs. Kendrick or her husband. The court finds that childbirth is not an illness; that it is evident from the questions preceding and following the nineteenth question that the inquiry was respecting her consultation of and treatment by a physician for some illness or ailment, and that the answer of plaintiff's wife to the nineteenth question was true. And it also finds that the answer, if not true, was not an intentional or willful suppression of an inquiry material to the risk assumed, and that the fact that plaintiff's wife did not state that she had been attended by a physician at the birth of her last child was immaterial and irrelevant to the risk assumed by defendant order.

"(4) The court further finds that to the forty-fifth question in the application, which was: 'Have you ever had a surgical operation performed, or received treatment in a hospital, sanitarium, retreat, or any public or private institution for the treatment of physical or mental diseases?' Mrs. Kendrick answered, 'No.' He also finds that at the birth of her third child, Circy, her womb was curetted by Dr. Bell, she at the time having childbed fever, that the curettment took place at her home, and not in a hospital, sanitarium, retreat, nor a public nor private institution for the treatment of physical or mental diseases; and the court, therefore, finds that her answer to the question was true; and the court further finds that the result obtained from the curettment was a good one,

that she soon recovered entirely from the trouble for which the curettment was done; and the court, therefore, further finds that, if not literally true, her answer was made in good faith, and not for the purpose of concealing any fact bearing on the risk from defendant order, and that the fact that she did not state that the doctor had curetted her womb at the time stated was not the suppression of any fact which would increase the risk, and that therefore the misstatement, if in fact her answer was a misstatement, was not material to the risk assumed by the defendant order.

"(5) The court further finds that, among others, the following question was propounded to her in the application: (42) 'Have you any vaginal discharge or uterine hemorrhage, or disease of the uterus or its appendages, or is any such disease suspected by you? (If so, state character, and give particulars.)' To which she answered, 'No.' The court finds that plaintiff's wife at the time she made the application had a slight laceration of the perineum, that the laceration did not impair her health in any way, that it in no way brought about or contributed to the ovarian trouble for which she was operated upon at the time of her death, that the laceration was not a disease of the uterus or of its appendages, and that therefore plaintiff's wife's answer to the forty-second question was true; and the court further finds that, if the answer was not true in fact, there is no evidence tending to show that she had any knowledge of such laceration, which knowledge could have only been acquired through information of her physician, and that her answer was made in good faith, and not with the intention of concealing her true condition from defendant order, that her failure to state that she had the laceration was immaterial to the risk assumed by defendant order, in that it in no way increased the risk or hazard incurred by defendant in issuing the policy to her.

"(6) That Mrs. Kendrick did not have an attack of malaria during the 5 years next before the filing of the application for insurance herein.

"(7) That the applicant Mrs. Kendrick was not asked in the application for insurance, and did not state in said application that she had not suffered with malaria.

"(8) That Mrs. Kendrick had occasional headache; but that such headache was not frequent or severe.

"(9) That Mrs. Kendrick never suffered with piles. That she was asked in the application if she had ever had piles, and she answered, 'No,' to such question."

The court's conclusions as to the law, on the facts found by him, were as follows: "The court is of the opinion that plaintiff ought to recover in the case, for the reason that Mrs. Kendrick's answers to all the questions propounded to her in the application were in fact true, but, if not true in the par-

ticulars herein specifically pointed out, the same were immaterial misrepresentations, and, furthermore, there was no evidence introduced by defendant at the trial that had it been advised of the existence of the facts it claims had been suppressed by plaintiff's wife that it would not have issued the certificate to her; this the court believes would have been necessary to defeat a recovery on the policy had the evidence shown clearly that the answers were untrue, and that they were so made intentionally, because they certainly would not be that character of misrepresentations that would authorize the court, in the absence of evidence so showing, to declare them as a question of law material to the risk assumed by defendant in issuing the certificate."

On the findings made judgment was rendered in appellee's favor for $1,000, interest and costs.

Odell & Turner and Homer L. Baughman, all of Ft. Worth, for appellant. Marsh & McIlwaine, of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] As noted in the court's findings, deceased answered the question numbered 19 in the negative. That question was: "Have you consulted or been attended by any physician during the past 5 years?" It conclusively appeared that at a time, to wit, November 6, 1907, less than 5 years before the date of the application, to wit, November 19, 1910, deceased was attended by a physician, on the occasion of the birth of her youngest child. It is insisted the court, therefore, erred in finding that the answer of the deceased to said question was true. The two questions immediately preceding that one were as follows: (17) "Are you in good health at the present time?" (18) "Have you ever changed or been ordered to change your residence on account of health?" The two questions immediately following it were as follows: (20) "What was the cause for each such consultation or attendance?" (21) "Have you fully recovered from each illness?" The trial court was of the opinion that, when read in connection with those immediately preceding and those immediately following it, question 19 should be construed as having reference to deceased's consultation with or treatment by a physician for "some illness or ailment." We agree that the question should have been so construed, and therefore that it appeared the answer to it was true, unless childbirth should be classed as an illness or ailment. That it should not be, when natural, as the testimony showed it to have been in the instance in question, we think is clear. Rasicot v. Royal Neighbors of America, 18 Idaho, 100, 108 Pac. 1053, 29 L. R. A. (N. S.) 433, 138 Am. St. Rep. 180. In the case cited the Supreme Court of Idaho said: "Appellant attempted to show that the answer to question 18 was

false, for the reason that the insured had consulted a physician within the period of 7 years immediately preceding her application. On this point there was a sharp conflict in the evidence, except with reference to one visit by a physician who, it is admitted, attended her on April 5, 1899, the date of her last previous confinement. The appellant had notice that the applicant was a married woman, and that she had already borne five children, and that she had been confined on April 5, 1899, which was only 3 years prior to this application. It might have assumed that either a physician or a midwife attended her on this confinement. The attendance, however, of a physician at the time of a normal case of confinement is clearly not a 'consultation' or treatment of a 'personal ailment' of the female confined. Childbirth is a physiological fact which occurs in the regular course of nature, and neither signifies nor entails disease or ailment in the usual and ordinary use of those terms."

[2, 3] Following the birth of one of her children 10 years before she applied for the certificate sued upon, deceased suffered from "childbed fever." The treatment she was then subjected to by physicians included what they called "curetting her womb." The curettment was accomplished by the use of surgical instruments. As a result of the treatment it seems she promptly and entirely recovered from the fever. Appellant insists the curettment deceased's womb was subjected to was a "surgical operation" within the meaning of the question numbered 45, as follows: "Have you ever had a surgical operation performed or received treatment in a hospital, sanitarium, retreat, or any public or private institution for the treatment of physical or mental disease?" and therefore that the court erred in finding that deceased answered truly when she replied to said question in the negative. The finding of the court was based on the fact that the curettment of deceased's womb took place at her home, and not in a hospital, sanitarium, retreat, or other public or private institution for the treatment of disease, as contemplated by the question. If appellant did not intend by the question to limit the inquiry to operations performed in the institutions named, we think deceased was warranted in believing it intended to, and that, construing the question as she had a right to construe it, her answer was true. Construing it that way, had she answered the question in the affirmative, her answer would have been false, for the curettment was not performed in one of the institutions named. If appellant intended to have deceased to state whether she had ever had a surgical operation performed on her person, either in or outside any of the institutions named, it should have seen to it that the questions it propounded to her clearly advised her of its intention, and were not capable

of such easy and reasonable misconstruction as the question propounded to her was. It will be noted that the meaning of the question depends entirely on the punctuation thereof. With the addition of a comma after the word "performed," the question means what appellant insists it was intended to mean. Without the comma, as it appears in the record, it means what deceased construed it to mean. In construing the question, we do not think the comma should be supplied in order to convict the deceased of having made a false answer. On the contrary, we think it should be construed as it is written in the record, and as, so written, deceased had a right to construe it. So construing it, the answer she made to it was true.

At the time physicians curetted deceased's womb as above stated, they found that on some former occasion when deceased had given birth to a child, she had suffered a laceration of the perineum. This being true, appellant contends that deceased's answer, in the negative, to the question numbered 42, as follows: "Have you any vaginal discharge or uterine hemorrhage, or disease of the uterus or its appendages, or is any such disease suspected by you?" was false, and that the trial court, therefore, erred when he found that her answer was true. It is sufficient to say, in reply to the contention, that, as found by the court, and as shown by the testimony, the perineum is not an appendage to the uterus.

In connection with each of the findings of the court complained of as above stated, the court further found that, if the answers made by deceased were respectively false, that would not furnish a reason for denying appellee a recovery on the certificate, because it did not appear that same were material to the risk appellant assumed. If we did not agree with the trial court that the answers were true, we would not feel warranted, on the record before us, in saying he erred in his finding that they were immaterial, and therefore did not operate to avoid the certificate. Article 4834, R. S. 1911.

We think the testimony was sufficient to support findings made by the trial court as follows: (1) That deceased was in good health at the time she applied for the certificate. (2) That she had not had an attack of malaria within the 5 years immediately preceding the time she applied for the certificate. (3) That she had not suffered from piles. (4) That, while she had attacks of headache, the attacks were neither frequent nor severe. Therefore we overrule the assignments attacking said findings of the court.

There are other assignments; but they also are believed to be without merit, and are overruled.

There is no error in the judgment, and it is affirmed.