NATIONAL COUNCIL OF THE KNIGHTS AND LADIES OF SE-
CURITY, A CORPORATION, *Plaintiff in Error,* v. MORGAN
L. GLENN, *Defendant in Error.*

Opinion Filed December 21, 1918.

1. Pregnancy is not a personal ailment or condition of bad or unsound health so as to violate an agreement or stipulation that a member of a beneficiary society shall not be reinstated after suspension for non-payment of dues, unless such member is in good health at the time of the reinstatement.

2. In a suit on an insurance policy issued by a Beneficiary Society, where the terms of the contract provide for the reinstatement of a policy holder who is in arrears, upon his payment of all overdue assessments, provided "he be in good health at the time of making payment to the Financier, with a view to reinstatement," a plea that the insured was "not in good health" at the time of his reinstatement, is too vague and indefinite, and the defendant may be required to set forth definitely and specifically in what respect the insured was not in good health, and the nature of his ill-health.

3   Where such ill-health is pleaded, the burden of proof is upon the defendant to establish it by a preponderance of the testimony.

4.  The fact that an instruction contains the correct law governing the case is no grounds for exception if refused, if it appears that the Court's charge covered the principle, embodied in the instruction requested, and fully and correctly instructed the Jury on the point.

Writ of Error to Circuit Court for Gadsden County; E. C. Love, Judge.

Judgment affirmed.

*Greene S. Johnston, Jr.* and *Guyte P. McCord,* for Plaintiff in Error;

*Watson & Wright,* for Defendant in Error.

BROWNE, C. J.—This is an action brought to recover upon a Beneficiary Certificate issued by the plaintiff in error to Mrs. Lonnie L. Glenn, in which her husband, Morgan L. Glenn, was the beneficiary. Verdict was rendered and judgment entered against defendant below, who brings writ of error to this court.

By the terms of the contract, assessments of holders of insurance certificates became due on the first of each month, and in case of failure to pay the assessment on or before the last day of the month, the holder would be automatically suspended, but could reinstate himself by making payment within sixty days of all arrears of every kind, "provided, however, that he be in good health at the time of making payment to the financier, with a view to reinstatement."

38—Vol. 76.

Mrs. Glenn failed to pay her April and May assessments and thereby became automatically suspended on the last day of April. Within sixty days, to-wit, the 4th day of June thereafter, payment of all arrears was made and accepted by the financier. On June 9th, Mrs. Glenn died.

The first assignment of error is based upon the overruling of defendant's motion for a new trial, the first three grounds of which are that the verdict was contrary to law, to the evidence and to the law and evidence. In discussing these, the plaintiff in error contends that the rule that contracts of insurance should be liberally construed in favor of the insured, does not apply to insurance contracts with Beneficiary Associations. Neither the record nor the briefs disclose any reason for invoking this rule, and no question arose in the trial of the cause which makes it pertinent.

As we view this case, it hinges solely upon the question of fact, whether or not the beneficiary was in good health at the time she made payment of what she was in arrears, for the purpose of reinstatement. On this question the court charged the jury that, "pregnancy is not a personal ailment or condition of bad or unsound health so as to violate an agreement or stipulation that a member of a Beneficiary Society shall not be reinstated after suspension for non-payment of dues, unless such member is in good health at the time of the reinstatement." This charge correctly states the law.

In Rasicot v. Royal Neighbors of America, 18 Idaho 85, 108 Pac. Rep. 1048, 29 L. R. A. (N. S.) 433, it was held: "An agreement or stipulation in a contract of insurance made with a married woman, that the policy shall not go into effect unless it is delivered to her 'while in sound health,' is not violated by reason of the applicant being pregnant at the time of the delivery of the policy." See

also American Order of Protection v. Stanley, 5 Neb. (Unofficial) 132, 97 N. W. Rep. 467.

Whether the insured was in good health on the 4th of June was a question of fact for the jury to determine from the evidence. The defendant pleaded that the insured was not in good health when she was reinstated, and the burden was upon him to prove this by a preponderance of the testimony. Dr. Greene, of Greenville, and Dr. Davis, of Quincy, were the only witnesses who testified on this point, and neither one undertook to state that on the day when she was reinstated she was not in good health in the legal acceptance of the term as applied to contracts of life insurance.

In a letter from Dr. Green to Dr. Davis, introduced in evidence, he said: "I desire to say that up until the 3rd or 4th of June, 1915, when I last saw her, her indisposition was merely the vomiting of pregnancy. In other words, her condition at that time was absolutely a physiological one." He testified: "On June 4th, 1915, Mrs. Glenn's condition was the direct result of her pregnancy, which I consider a physiological condition. It is not possible for a person's condition as to the same subject matter to be both physiological and pathological at one and the same time. However, a physiological condition may become pathological; for instance, the normal vomiting of pregnancy may become so pronounced as to endanger the life of a woman, in which case it would undoubtedly be classed as a pathological condition. * * * In my letter to Dr. J. C. Davis, of Quincy, I meant that all of the symptoms with which Mrs. Glenn was suffering were due to pregnancy, which pregnancy I consider a physiological condition or natural condition. I have never seen Mrs. Glenn since the night she was taken from Greenville to Quincy, Florida." He also testified that he made an

examination of Mrs. Glenn's urine and found no albumen or casts, and there was no sugar present.

Dr. J. C. Davis, a medical expert, testified in part as follows: "From my experience as a physician I would say that if an examination is made of the urine of a person and that examination shows no albumen or casts in the urine, I would say that the person whose urine had been examined was not suffering from pernicious vomiting of pregnancy. The condition of pernicious vomiting of pregnancy could not exist without at the same time there being albumen or casts in the urine. * * * A physiological condition with reference to a human being is a normal condition. A pathological condition is a diseased condition. It is not possible for a physiological and a pathological condition to exist at one and the same time with reference to the same subject matter in one person. The condition of a woman who is pregnant in a state of normal pregnancy is physiological. A person who is in a physiological condition of health is in good health. * * * If a woman who was pregnant and examination was made of the urine and that examination disclosed no albumen and no casts I would say she was in a normal condition."

Mrs. Glenn came under Doctor Davis' care on the morning of June 6th; twelve hours later he made his first examination of her and 'found that she was affected with pernicious vomiting of pregnancy." He also testified that when Dr. Green turned her over to him on the morning of June 6th, he stated "that she was in a normal condition." He also testified that "It is possible for a patient to develp a condition of pernicious vomiting of pregnancy and die within twelve hours of uraemic poisoning."

From this it appears that there was sufficient evidence to justify the jury in their verdict, and that the defendant

below failed to establish his plea, that on June 4th the insured was "not in good health, suffering from a perni- cious vomiting of pregnancy."

The second assignment of error is based upon the ruling of the court requiring compulsory amendment of the de- fendant's plea that at the time the insured was reinstated she was "not in good health." The Court required the defendant to "definitely and specifically set forth in what respect the insured was not in good health at the time alleged in said plea, and the nature of her ill-health at such time." We find no error in this ruling. The allega- tion that a person was "not in good health" is too vague and indefinite to put a party on notice of what is intended to be proved under that allegation, and tends to subject him to surprise and prevent him from preparing to meet it on the trial. If the defendant was sufficiently advised at the time it swore to its plea that the insured "was not in good health," it must have known the malady it claimed she was suffering from, and it was its duty to state it so that the plaintiff could be prepared to meet it on trial.

The third, fourth, fifth, sixth and seventh assignments relate to rulings of the court sustaining objections by the plaintiff to questions propounded to the husband of the insured as to "when was it first brought to his notice that his wife was ill;" "when was he notified to come and bring his wife home;" "whether or not on or about June 4th he received information that his wife was ill;" "whether or not he had sworn at a previous trial that he had received information on June 4th that she was ill;" and "whether he went to Greenville in answer to any sum- mons from any member of his wife's family or her attend- ing physician."

The pivotal point in this case was the actual condition of health of the insured on the 4th day of June. On this

day and for some days prior thereto, the husband was in Quincy and his wife in Greenville, and his opinion of the condition of her health, or what he had heard about it, was not competent testimony as to the actual condition of her health. Counsel for plaintiff in error has correctly state the proposition. "The question on this point is the condition of health of the insured at the time of payment was made and not what the beneficiary knew or did not know about it when he paid the assessment in another town many miles from the insured."

The eighth and ninth assignments relate to the denial of the defendant's motion to strike testimony which he claims tended to show a waiver or forfeiture. The plaintiff below did not claim any waiver or forfeiture and no testimony was introduced for that purpose. In denying the defendant's motion to strike on the ground that there was nothing in the pleadings to show that the plaintiff intended to rely upon a waiver or forfeiture, the court said: "If they do, under the present state of the pleadings I will not allow it; but I don't think that would be an issue in the case. It would be improper evidence tending to support that question."

The insured had failed to pay her April and May assessments and became automatically suspended on the last day of April. Under the constitution and by-laws which were a part of the contract, she had sixty days in which to pay up her arrears and become reinstated. This was done on June 4th, and she was well within the sixty days and no question of waiver or forfeiture was involved or was presented. There was no error in overruling these objections.

The tenth, eleventh, twelfth and fourteenth assignments relate to the refusal of the court to give certain instructions at the request of the defendant. Under the rule laid down by this court these assignments should be consid-

ered as abandoned, as the plaintiff in error has not dis-cussed them, but contented himself with stating that he believes these instructions contain the correct law as re-vealed by decisions hereinbefore referred to and quoted from. The fact that an instruction contains the correct law governing the case is no grounds for exception if refused, if it appears that the court's charge covered the principle, embodied in the instruction requested, and fully and correctly instructed the jury on the point, as was done in this case. We therefore find no error in the refusal of the Court to give the charges requested.

The thirteenth and sixteenth assignments are aban-doned.

The fifteenth, that the verdict was contrary to the law, is covered in the discussion of the first assignment.

Finding no error the judgment is affirmed.

TAYLOR, WHITFIELD, ELLIS and WEST, *JJ.*, concur.