14314

LEE v. METROPOLITAN LIFE INS. CO.

(186 S. E., 376)

476

May, 1934.

*Messrs. Leon W. Harris* and *Williams & Busbee,* for appellant,

*Messrs. Hendersons & Salley* and *Haynsworth & Haynsworth,* for respondent,

June 12, 1936.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This record contains a number of irrelevant matters which it is necessary to eliminate in order to clarify the relevant issues. The following statement is deduced from the relevant parts of the statement set out in the record, the evidence, and exhibits:

Lucile Utley was an employee of Seminole Mills and, as such, was insured under a group policy issued to the mills

upon the lives of its employees. To each employee so insured was issued a certificate of insurance, which was subject to and under the terms and conditions of the group policy. To Lucile Utley was issued certificate No. 758 under group policy No. 5755-G in Metropolitan Life Insurance Company; both certificate and policy are dated March 25, 1930. About June 20, 1931, Lucile Utley was married to Stephen D. Lee, and there was placed on the policy an indorsement to the effect that the employee's name had been changed to "Lucile Lee," and the beneficiary changed to "Stephen D. Lee." Lucile Lee continued in her employment at Seminole Mills up to April 1, 1932, at which time there occurred a strike at the mills in consequence of which the mills were shut down. Previous to that time she had given notice that she wished to quit on April 2, 1932. The insurance on the group policy was canceled on April 6, 1932, and notice given to the mills and proper employees. Mrs. Lee died June 22, 1932; she had given birth to a child ten days before she died.

The action is brought by plaintiff in his individual capacity as beneficiary under the policy to Lucile Lee. It is not clear from the language of the complaint whether he is suing as the beneficiary under a life policy, or for the benefits under the total and permanent disability clause. However, in their brief, counsel for appellant state that while they still claim the right to recover as "for a death benefit under the terms of the policy. * * * plaintiff upon trial pressed for recovery mainly for the reason that the defendant was liable to the insured for the payment under the disability clause of the policy providing that if the insured died during a period of disability any installments unpaid at the date of death would be commuted and paid in one lump sum to the beneficiary."

The defendant, by answer, set up a general denial except as to the formal parts of the complaint, and that the policy was in fact a certificate under and subject to the terms of

the group policy, which provided that when any employee of the Seminole Mills ceased to be employed there, his insurance shall cease as of that date. That Lucile Utley Lee never filed any proof of disability; that she continued to work until April 1, 1932, when the mills shut down because of a general strike; that she had previously given notice that she wished to quit April 2, 1932; that pursuant to the terms and conditions of the policy the insurance on her and all the other employees of the Seminole Mills was canceled April 6, 1932, and due notice given to this defendant by the United Merchants & Manufacturer's Management, Inc., who owned the Seminole Mills, and its proper officers.

That the policy provided that upon receipt "by the Company of due notice and proof in writing that an employee while insured   *   *   *   had been totally and permanently disabled as a result of bodily injuries or disease   *   *   * the Company shall discontinue the life insurance in force on said employee, and three months after receipt of such proof shall commence to pay, subject to the terms of the policy, in lieu of the insurance at his death, certain monthly installments."

That Mrs. Lee did not become totally and permanently disabled prior to the cancellation of the policy, but that her disability, if any, and her death were caused by childbirth, or complications arising therefrom; that the policy was not of force when she died.

The case was heard by Judge Rice. At the close of all the testimony defendant moved for a directed verdict in its favor on the following grounds:

"(1) That the benefits for permanent disability are provided for in the policy only in case said disability is the result of bodily injury or disease, whereas the testimony fails to show or raise an issue upon the fact that the disability of Mrs. Lee arose from either accident or disease.

"(2) That the only inference to be drawn from the testimony beyond mere surmise or conjecture—is that there has

been a complete failure to show that Mrs. Lee's pregnancy was not the cause of her alleged disability to continue her work.

"(3) That the testimony shows that the policy of insurance was cancelled on April 6, 1932, and that the only inference to be drawn from the testimony is that Mrs. Lee's only disability at said time resulted from her pregnancy.

"(4) That no proper inference can be drawn from the testimony to the effect that when the policy was cancelled that Mrs. Lee was suffering from a permanent disability.

"(5) That under the terms of the policy involved, no claim can be sustained for the death of Mrs. Lee as a death claim as she died after she had ceased work for Seminole Mills and after the policy was cancelled; nor can claim be sustained for total disability, because no due notice or proof of total disability was given to the Company in writing three months before Mrs. Lee's death nor at any time before her death. Hence, the policy in question was not discontinued as a life policy, and the provisions as to total disability were never invoked.

"As to the alleged offer to pay premiums, it is submitted that the offer does not affect the case both as it was made to the paymaster of the mills and not to the insurance company, and further that it has not been brought into Court. Further, and especially, it appears that the policy lapsed and was cancelled April 6, 1932, and that no premium was paid to the insurance company thereafter."

After argument, his Honor said:

"I think under the terms of the policy that that disability must have been claimed and established during the life time of the insured."

He made no utterance as to the other grounds of the motion for directed verdict, but respondent has given the proper notice that it would move this Court to sustain the order directing the verdict upon the other

grounds of the motion. Therefore all the issues raised in the motion are before the Court.

Plaintiff appeals upon five exceptions as follows:

"1. It was error for the trial judge to direct a verdict in favor of the defendant.

"2. It was error for the trial judge to refuse to send the case to the jury under proper instructions.

"3. It was error for the court to rule and hold that the record did not show that total disability to have existed during the life of the insured.

"4. It was error for his Honor to rule that the disability must be established during the life time of the insured.

"5. It was error for his Honor to rule that total disability must have been claimed and determined during the life time of the insured."

The Court is not able to find any case which supports the holding of the trial Judge to the effect that when one comes into Court and seeks to recover on the disability clause of an insurance policy, the disability must be established during the lifetime of the insured, if it was intended to apply that rule in every such case. It may be that in cases where the disability occurred during the lifetime of the insured, but before the issue of her right to recover them could be determined the insured died, that there might accrue to the estate of the insured a just claim against the insurer.

However, we are satisfied that in this case no harm has come to the plaintiff by the disputed ruling of the trial Judge for the reason that under the express terms and conditions of the policy here sued on, no right of action survived to the estate of the deceased or to the plaintiff as beneficiary of the policy.

The policy was issued as a life policy. The group policy provides:

"Death Benefit—Upon receipt by the Company of due notice and proof, in writing, of the death of any employee while insured herein * * * the Company shall

pay to the * * * beneficiary of record * * * the amount of insurance then payable on account of such employee according to the formula."

The certificate No. 758, issued to Lucile Utley under and subject to the terms and conditions of the group policy No. 5755-G, insured her in the sum of $1,000.00. It contains the following provision:

"If death occur while the employee is in the employ of the employer, and while said group life policy is in force, the amount of insurance then in force thereunder on said employee shall be paid to Hattie Utley. In case of the termination of the employment of the employee for any reason whatsoever, all of his said insurance shall immediately cease."

It will be recalled that after this certificate was issued to Lucile Utley, she had the beneficiary thereunder changed from Hattie Utley to Stephen D. Lee.

There can be no dispute of the fact that *ab initio* this was a life policy with provision for the payment of $1,000.00 to the named beneficiary upon proof of the death of the insured.

It is plain that the appellant lays little stress upon his claim to this benefit under the life policy. His counsel frankly admits in his argument that in the trial of the case he laid special stress upon the right to recover under the disability clause of the policy. Appellant cannot recover on the policy as a life policy for the reason that it was canceled in the lifetime of Lucile Lee, the insured. When the employees of the Seminole Mills went on strike April 1, 1932, the mills shut down and on the 6th of April the respondent insurance company canceled the group policy, as it had a right to do under the terms and conditions thereof, and gave notice of the cancellation to the owners of the mills and its proper officers. This automatically canceled the certificates of those employees insured thereunder, which included Lucile Lee. It would be most unreasonable to hold that the insurance

company should be compelled to maintain the group policy of force when the persons insured under it had ceased work for the mills and were not in position to pay their part of the monthly premiums. It is not to be expected that the mills would pay its part of the premiums when the employees had voluntarily quit work.

The policy expressly provides that:

."The insurance on any employee insured hereunder who shall have ceased to be in the employ of the employer, shall be discontinued as of the date such employee left the employment of the employer."

On the 1st day of April, 1932, Mrs. Lee gave notice to the mills that she wished to quit on April 2d. She died June 22, 1932, without having returned to the employment of the mills.

The policy provides the method by which it may be converted into a disability clause policy, to wit:

"(b) Total and Permanent Disability Benefits—Upon receipt by the Company of due notice and proof in writing —that any Employee, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for wage or profit, the Company shall discontinue the insurance in force on the life of said Employee and (3) three months after receipt of such proof, shall commence to pay, subject to the Terms hereof, in lieu of the payment of insurance at his death, monthly instalments as defined to said Employee or to a person designated by him for the purpose."

Section 5 of the group policy provides:

"No payment for total and permanent disability shall be made unless written notice has been presented to the Company within one year after the termination of the insurance on any such disabled person."

It is conceded that Mrs. Lee never gave any notice of total and permanent disability and never made any claim therefor.

As is shown above, in order to change the death benefits to disability benefits, proof must be given; then "three months after receipt of such proof, the Company shall commence to pay, subject to the Terms hereof, *in lieu of the payment of insurance at his death, monthly instalments as defined below to said Employee or to a person designated by him for that purpose.*" (Italics added.)

Again, the group policy provides:

"During the period of total and permanent disability, *the said Employee shall not have the right to receive in one lump sum the commuted value of any unpaid instalments; but if the said Employee dies during such period any instalments remaining unpaid at the date of death,* shall be commuted. \* \* \* " (Italics added.)

The certificate provides:

"*In the event of the death of the Employee during the period of total disability any instalments remaining unpaid shall be commuted.* \* \* \* " (Italics added.)

There is no particle of ambiguity about any of this quoted language from the group policy and the certificate, and the only reasonable deduction from it is that it is the clear intent, and the express provision of the contract of insurance, that the disability must occur, and the proof thereof be furnished, during the lifetime of the insured.

In the light of this definition and limitation of the language of the Circuit Judge there was no error in his ruling.

Appellant's counsel construes the ruling of the Circuit Judge to be that the claim for disability must be established by judicial process in the lifetime of the insured. We think this construction is unwarranted. It is clear that the Court meant that the proof required to be furnished to show disability must be furnished in the lifetime of the insured.

The exceptions made by appellant all relate to this ruling and the direction of the verdict by the presiding Judge. They must all be overruled.

The respondent gives notice of a motion to sustain the judgment of the lower Court on the additional grounds set out in the record.

These raise but two questions which claim our attention.

The appellant takes the position that there is evidence that the disability occurred during the lifetime of Mrs. Lee; that under the terms of the policy and certificate the insured had twelve months in which to notify the company of such disability. That this notice was given by the letter of plaintiff's counsel dated March 8, 1933; Mrs. Lee died June 22, 1932. Did such letter comply with the requirements of the policy? We reproduce it:

"Leon W. Harris, Attorney,
"Anderson, S. C.,
"March 8, 1933.

"Metropolitan Life Insurance Co., New York, N. Y.

"Gentlemen: *In re:* Lucille Lee, Group Policy The Seminole Mills, Clearwater, S. C., No. 5755, Serial No. 758.

"Mrs. Lee died on or about May 22, 1932. Some time prior to that date Mrs. Lee, on account of her disability, ceased work and never regained her health to the point where she could go back to work. Under these conditions you are liable for the amount of the policy and I will ask that you forward me at once the proper blanks with which to file application for payment of same. I do not think the premiums were paid up to the date of her death; however under the terms of the policy it is my construction that her disability would carry the policy in force.

"Please let me hear from you with blanks by return mail."

Something more than mere *notice* of disability is necessary. There must be proof of such disability offered. There must be presented the facts and conditions upon which the proof of disability is claimed. In other words, such information must be given the company upon which it may predicate its investigation to determine whether the claim of total and permanent disability is well

founded. No such proof is contained in this letter. Appellant argues that no proofs of disability were forwarded because the company did not send the blanks for that purpose. No such blanks were asked for. Counsel announced that some time prior to her death "Mrs. Lee, on account of her disability, ceased work and never regained her health to the point where she could go back to work. *Under these conditions you are liable for the amount of the policy and I will ask that you forward me at once the proper blanks with which to file application for same."* (Italics added.)

If it be conceded that it was the intention of counsel to ask for blanks upon which to make proof of disability, there is in the record no evidence that the company refused to send them. The only other reference to the matter is the letter of the insurance company in answer to that of Mr. Harris, and of date March 16, 1933, which is to this effect:

"We acknowledge your letter of March 8. The matter is receiving attention and we will write you further in due course."

The next step in the proceedings which appears by the record is that the action was begun the 26th of April, 1933, by serving of summons and complaint.

Frankly we do not think the letter of plaintiff's counsel is of any weight in this controversy. As we have held, the proof of disability should have been given in the lifetime of Mrs. Lee, because the terms and conditions of the policy expressly require it, and it was not done. In the second place, the policy was canceled in the lifetime of Mrs. Lee, and the plaintiff could take nothing under it.

In view, however, of the earnestness with which counsel has argued it, we may say: The letter falls far short of meeting the requirements of proof.

No rule of law is more firmly established in this jurisdiction than that one suing on a policy of insurance, where the notice required by the policy is not timely given, cannot recover. And the Court has gone so

far as to hold that the failure to give the required notice in the allotted time is fatal to the right of recovery, even if it be shown that the insurance company has suffered no harm by the delay. *Free v. United Life & Accident Ins. Co.,* 178 S. C., 317, 182 S. E., 754. Filed December 11, 1935.

In striking analogy with the letter of Mr. Harris is that set out in the case of *Black v. Jefferson Standard Life Ins. Co.,* 171 S. C., 123, 171 S. E., 617, 619:

"York, S. C., Dec. 23rd, '30.

"Jefferson Standard Life Ins. Co., Charlotte, N. C.

"Gentlemen: Feb. 13th last year I had a compound fracture of both bones below knee and as I was totally disabled for quite a time I am writing to ask you just what benefit I get from my policy No. 206233 in your Company."

The opinion of this Court contains the following:

"The real question is as to whether the letter of December 23d can be considered due proof of disability as provided in the policy.

"The letter, at most, was but a request for information. The policy provides for the payment of benefits only upon receipt of due proof of the disability. It has been said that proof is 'the perfection of evidence,' and it cannot be soundly held that a letter seeking information meets the requirement of the policy that due proof of the disability be furnished."

This letter furnished far more proof than did that of Mr. Harris. It stated the nature and extent of the injuries of the insured, to wit, "a compound fracture of both bones below knee." Mr. Harris, in his letter, merely asserts that "Mrs. Lee, on account of her disability, ceased work and never regained her health to the point where she could go back to work."

This whole question has been elaborately and ably considered by Judge C. J. Ramage in an order on circuit in the case of *Corley v. Atlantic Life Ins. Co.,* 179 S. C., 95, 183 S. E., 596, 597. So thorough and satisfying was this

order of Judge Ramage that on appeal it was adopted as the judgment of this Court.

Touching upon the necessity of giving the notice and making the proof required by the policy, Judge Ramage said:

"The testimony of the insured, Alonzo E. Corley, was taken, *de bene esse,* a short while prior to this death, and he thereby admitted that the first notice given by him to the company of his claim was the letter of his attorney dated September 26, 1934, and that he was not at any of the times while said policies were of full force prevented by a physical or mental incapacity from giving notice and furnishing proof of his alleged disability to the defendant company. * * * The law in this state is well settled that the insured was under the duty to comply with the conditions of his policies before he would be entitled to recover benefits. It was so held in the recent case of *Ford v. New York Life Insurance Company,* 176 S. C., 186, 180 S. E., 37, 42, decided March 5, 1935, as follows:

" 'It is true that the plaintiff is required to file proof of disability with the company before he is entitled to the benefits of the disability provisions contained in his policy.' "

There follows a résumé of the many cases sustaining the rule laid down in the *Corley case.* This opinion was filed February 3, 1936.

The respondent further contends that the presiding Judge's order should be sustained on the additional ground that Mrs. Lee's alleged total and permanent disability did not arise as a result of accident or disease, as specified in the policy; but that her ills were due to pregnancy, and are not covered by the policy.

The language of the group policy relating to disability is that, "while insured * * * has become totally and permanently disabled *as a result of bodily injury or disease.* * * * " (Italics added.)

We have read with especial care the testimony in this case and have come to the firm conclusion that there is a complete failure of proof that Mrs. Lee was

suffering from disability as the result of bodily injury or disease within the terms of the policy. There is left but one reasonable deduction from the evidence and that is that Mrs. Lee's condition was due entirely to her condition of pregnancy. Black's Law Dictionary (3d Ed.), 1462, thus defines pregnancy: "Pregnancy is the existence of the condition beginning at the moment of conception and terminating with the delivery of the child."

In the case of *Rasicot v. Royal Neighbors*, 18 Idaho, 85, 108 P., 1048, 1053, 29 L. R. A. (N. S.), 433, 138 Am. St. Rep., 180 (cited by respondent's attorney), this is stated:

"The application contained the stipulation that any certificate which might be issued to the applicant 'shall be delivered to me while in sound health and in pursuance of the by-laws of the order.' It is also contended that the insured was not in 'sound health' at the time of delivery because of pregnancy. Pregnancy is not *per se* a condition of 'unsound' health, nor is it a 'disease' or 'ailment' within the meaning of those terms used in this application and policy. * * * Childbirth is a physiological fact which occurs in the regular course of nature, and neither signifies nor entails disease or ailment in the usual and ordinary use of those terms."

Dr. Greene and Dr. Nevil both testified that pregnancy is not a disease.

Mrs. Lee's sister-in-law, Mrs. Derrick, testified: "Mrs. Lee worked until about April 1st and quit. She died June 22, 1932. * * * She worked until the whole mill went out on strike the 1st of April."

Her husband, the plaintiff, testified: "She was able bodied and did the housework and also worked in the mill and was normal and healthy when we were first married and none of these symptoms appeared until about four months before she quit work in the mill." He had previously testified that they had been married a year and two days before her death.

The statement of Mrs. Lee's work in the mill set out in the record discloses that from April 4, 1931, to April 1,

1932, that she made practically full time in the mill; that during the time she worked in 1932 she made full time, fifty-five hours, except that during the weeks of February 6–February 20 and February 27 when she made forty-five hours each of these weeks. Her husband testified: "She put in practically full time until the strike occurred, and drew her pay ticket every week."

The reason which Mrs. Lee gave Dr. Greene, her attending physician, for quitting work was that "she was getting too big and was afraid something would happen in the mill." The doctor, a witness for plaintiff, added: "Ladies usually stop before they have a child."

Much is sought to be made of the difference in the testimony of Dr. Greene and Dr. Nevil in reference to the presence of Bright's disease in Mrs. Lee. Dr. Greene testified that it developed after the birth of the child; or about ten days before she died. Dr. Nevil said that "chronic Bright's disease would mean a person who had had it for a long time." Dr. Nevil qualified this statement and said he had made no examination of the woman's urine nor made any other test; that the only way to be certain in such cases was to make a microscopic test; that the attending physician had the best opportunity of arriving at the correct diagnosis.

We do not place much store upon this difference of opinion between the medical witnesses, both of them testifying for plaintiff. If it be conceded that Mrs. Lee developed Bright's disease at a period prior to that fixed by Dr. Greene and that the disease was the result of pregnancy, it yet remains true that neither of them has testified that it rendered her totally and permanently disabled within the purview of the terms of the policy.

We do not think, as a matter of law, for the reasons hereinbefore given and discussed, that the plaintiff has a right to maintain this action; but if he has such right he has wholly failed to show by any evidence that Mrs. Lee was rendered totally and permanently disabled from a cause

arising from "injury or disease" as is specified in the policy. Mrs. Lee herself did not think she was totally and permanently disabled; she never claimed she was. It is evident that she expected that when the child was born to return to her work in the mill. When she gave notice that she would quit on the 2nd of April, she asked that her job be held open for her.

The judgment of the Circuit Court is affirmed on the additional grounds for affirmance presented by respondent, as well as on the ground upon which the directed verdict was ordered, as we have defined and limited that ruling as it is governed by the terms and conditions of the policy and certificate of insurance in this case.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER concurs in result.