(No. 51607

BETTE WINKS *et al.*, Appellees, v. THE BOARD OF EDUCATION OF NORMAL COMMUNITY UNIT SCHOOL DISTRICT NO. 5 OF McLEAN COUNTY, Appellant.

*Opinion filed December 20, 1979.*

UNDERWOOD and WARD, JJ., took no part.

Fleming, Messman & O'Connor, of Bloomington (Martin L. O'Connor and Thomas A. Eckols, of counsel), for appellant.

Drach, Terrell & Deffenbaugh, P.C., of Springfield, for appellees.

R. Garrett Phillips, of Springfield, for *amicus curiae* Illinois Association of School Boards.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiffs, Bette Winks, Jill Keller, Brenda Melcher, and Cheryl Myhra, are female teachers in Normal Community Unit School District No. 5 of McLean County.

They filed this action under section 24—6 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—6) and the rules of the defendant school district to recover sick leave benefits for time plaintiffs lost from their employment during the later stages of their pregnancies and subsequent to the birth of their children. The circuit court of McLean County entered judgment in favor of the plaintiffs. The appellate court, with one justice dissenting, affirmed, holding that each plaintiff had suffered a "personal illness" within the meaning of that term as used in section 24—6 of the School Code and that the plaintiffs were entitled to sick leave pay up to the number of days which had accumulated under the provisions of that section. (65 Ill. App. 3d 956.) We granted the school district leave to appeal.

Section 24—6 of the School Code provides:

> "The school boards of all school districts, including special charter districts, shall grant their full-time teachers and other employees sick leave provisions not less in amount than 10 days at full pay in each school year. If any such teacher or employee does not use the full amount of annual leave thus allowed, the unused amount shall accumulate to a minimum available leave of 90 days at full pay, including the leave of the current year. Sick leave shall be interpreted to mean *personal illness,* quarantine at home, or serious illness or death in the immediate family or household. The school board may require a physician's certificate, or if the treatment is by prayer or spiritual means, that of a spiritual advisor or practitioner of such person's faith, as a basis for pay during leave after an absence of 3 days for personal illness, or as it may deem necessary in other cases.
> ***
> For purposes of this Section, 'immediate family' shall include parents, spouse, brothers, sisters, children, grandparents, grandchildren, parents-in-law, brothers-in-law, sisters-in-law, and legal guardians." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 122, par. 24—6.)

This section was enacted in 1961 and has been amended several times since then, the last amendment being in

1972. The defendant school district, in 1968, adopted a sick leave policy implementing this section of the Code. Another sick leave policy was adopted by the school district in 1974 and in 1976. These policies used the language of the statute in defining those persons entitled to sick leave pay.

In 1968 the school district adopted a maternity leave policy, in addition to the sick leave policy, which provided that a pregnant teacher could continue to work as long as her health permitted and she was able to satisfactorily perform her duties. The maternity leave policy also provided that she could return to work following child-birth upon certification by her physician and upon the fulfillment of other requirements. In 1974 the maternity leave policy was revised and provided:

> "Once an employee commences Maternity Leave, then no Sick Leave shall be granted until the employee has returned to work. Sick Leave shall be available until Maternity Leave without regard to a pregnancy condition."

The maternity leave policy contained no provision for the payment of monetary benefits.

Plaintiff Winks was granted nonpaid maternity leave under the maternity leave policy of the school district as it existed in December 1973. The other plaintiffs gave birth to children subsequent to the 1974 revision of the maternity policy. Each of the plaintiffs had informed the defendant of her pregnancy, and each had, at some time, requested compensation for sick leave. These requests were denied by the defendant. Each had requested and received nonpaid maternity leave. Each plaintiff, with the exception of Winks, had a normal pregnancy, gave birth to a normal child by a normal delivery, and had a normal postpartum recovery. The record indicates that there were some abnormal occurrences or complications in plaintiff Winks' pregnancy and recovery.

This case deals solely with the interpretation of

section 24—6 of the School Code in reference to the sick leave policy of the defendant school district. It does not involve an equal protection issue. That issue was resolved by the Supreme Court in *Geduldig v. Aiello* (1974), 417 U.S. 484, 41 L. Ed. 2d 256, 94 S. Ct. 2485. This case does not involve a question under title VII of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000e *et seq.* (1976)). *General Electric Co. v. Gilbert* (1976), 429 U.S. 125, 50 L. Ed. 2d 343, 97 S. Ct. 401, held that the exclusion of normal pregnancies from sick leave benefits would not violate title VII. Also, it should be noted that the amendment to title VII contained in Public Law 95—555, approved October 31, 1978, which prohibits discrimination on the basis of pregnancy, does not apply to plaintiffs' claims, which arose before the effective date of that amendment. As the amendment was adopted subsequent to *Gilbert,* it nullifies the effects of that decision insofar as *Gilbert* held that exclusion of normal pregnancies from sick leave benefits did not constitute a title VII violation.

Under section 24—6 of the School Code and the defendant's sick leave policy, an employee of the defendant school district is entitled to compensated sick leave if the absence is occasioned by personal illness, if the employee is quarantined at home, or if there is a serious illness or death in the immediate family or household. This controversy involves the meaning of "personal illness" as that term is used in section 24—6 and in the defendant's sick leave policy. It is plaintiffs' position that this phrase encompasses medical incapacity due to pregnancy and childbirth which prevents the employee from performing the duties of her position.

Plaintiffs call our attention to the opinions that have been rendered by the Illinois Office of Education. In a letter opinion dated May 11, 1976, issued by that office, it is stated: "The school district is required to pay a teacher who has requested sick leave for maternity purposes all her available sick leave during the time in which she is

temporarily disabled." Another letter opinion dated May 25, 1977, stated: "Ordinarily, a teacher may use sick leave days for maternity purposes when she is actually physically disabled. In this context, pregnancy is to be treated in the same manner as any other physical disability." Another opinion dated March 1, 1978, is to the same effect. While these opinions would uphold the use of sick leave days for maternity-related disability, this has not always been the interpretation given to the statute by that office. A letter opinion dated August 8, 1973, contains this statement:

> "In the matter of sick days being used for the purposes of pregnancy, this office under both Mr. Hutson's and Mr. Schwartz's tenure held that such use of sick leave was impermissable since there existed no statutory authority allowing such use of sick leave. This position was *** reversed in part as a result of a federal ruling in Cook County, *Bravo v. Chicago Board of Education* and in part as the result of Federal rules and regulations issued by the Equal Employment Opportunity Commission."

It should be noted that *Bravo v. Board of Education* (N.D. Ill. 1972), 345 F. Supp. 155, referred to in the above-quoted letter opinion as a reason for the changes in the policy of that office, was reversed without published opinion on October 10, 1975 (*Bravo v. Board of Education* (7th Cir. 1975), 525 F.2d 695.) The date of reversal was subsequent to the Supreme Court's decision in *Geduldig v. Aiello* (1974), 417 U.S. 484, 41 L. Ed. 2d 256, 94 S. Ct. 2485. That case upheld the constitutionality of a pregnancy exclusion from coverage of the California disability insurance system against an equal protection challenge. The letter of opinion also states that the change in policy of the office was made in part as a result of Federal rules and regulations issued by the Equal Employment Opportunity Commission. These rules and regulations, issued in 1972 as guidelines for the interpretation of title VII, stated that disabilities caused by pregnancy

and childbirth are, for all job-related purposes, temporary disabilities and should be treated as such under any sick leave plan available in connection with the employment. The Supreme Court, however, in *General Electric Co. v. Gilbert,* held to the contrary. Therefore, the basis for the change in the policy of the Illinois Office of Education has been severely undermined.

The plaintiffs suggest that the interpretation given to section 24—6 of the School Code by the Illinois Office of Education, while not controlling on the court, nevertheless should be given substantial weight by the court when construing this section of the statute. The Supreme Court, in *General Electric Co. v. Gilbert,* acknowledged that interpretation given to a legislative act by the administrative body vested with authority to administer the statute is entitled to consideration in determining legislative intent. However, the Supreme Court noted that the guidelines of the Equal Employment Opportunity Commission, upon which the plaintiff in that case relied, were contrary to previous guidelines which had been promulgated by that administrative body pertaining to the same act. The court therefore declined to defer to the administrative guidelines that were in conflict with earlier pronouncements of the same agency. *General Electric Co. v. Gilbert* (1976), 429 U.S. 125, 140-43, 50 L. Ed. 2d 343, 357-58, 97 S. Ct. 401, 410-11.

We, likewise, conclude that the letters of opinion issued from the Illinois Office of Education stating that maternity benefits must be paid under the provisions of section 24—6 are entitled to little weight in view of the fact that they directly contradict prior interpretations of that section of the statute by the same administrative office. We must also consider that the prior interpretation implemented the Act following its original enactment.

Provisions of a statute should be construed in light of the statute as a whole. (*People ex rel. Castle v. Taylor* (1955), 7 Ill. 2d 501, 504; *Sternberg Dredging Co. v.*

*Estate of Sternberg* (1957), 10 Ill. 2d 328, 334.) We note that the term "personal illness" in section 24—6 of the School Code provides that benefits under that section are limited to a more narrow group than are benefits under other sections of the School Code. For example, prior to 1974 it was permissible to discharge a teacher who became unable to perform her duties due to pregnancy. (See, *e.g., In re Appeal of School District* (1943), 347 Pa. 418, 32 A.2d 565.) However, in *Cleveland Board of Education v. La Fleur* (1974), 414 U.S. 632, 39 L. Ed. 2d 52, 94 S. Ct. 791, the Supreme Court held that the mandatory termination of employment due to pregnancy violated the due process clause of the fourteenth amendment. In 1975, following that decision, section 10—22.4 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 10—22.4) was amended. It provided, in pertinent part:

> "*Temporary* mental or *physical incapacity* to perform teaching duties, as found by a medical examination, is not cause for dismissal." (Emphasis added.)

The use of the term temporary physical incapacity is broader than the term "personal illness" and is broad enough to encompass temporary incapacity to teach because of pregnancy and childbirth. Thus, in keeping with the holding in *Cleveland Board of Education v. La Fleur,* the School Code specifically provided that such a condition is not grounds for dismissal.

Also, section 24—13 of the School Code provides that a teacher's tenure is not affected by an absence caused by "temporary illness or *temporary incapacity.*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 122, par. 24—13.) Here again the term "temporary incapacity" is broader than the term "temporary illness" used in the same section and, further, is broad enough to include incapacity to teach due to pregnancy and childbirth. Thus this provision of the School Code conforms the law in this State to the holding of the Supreme Court in *Nashville Gas Co. v. Satty* (1977), 434 U.S. 136, 54 L. Ed. 2d 356, 98 S. Ct. 347, where it

was held that an employer's policy of depriving employees returning from a pregnancy leave of accumulated job seniority violated title VII of the Civil Rights Act of 1964.

Both of these sections of the School Code, in extending protection to those who are unable to perform the function of their positions because of pregnancy and childbirth, use the broader term "temporary incapacity." Section 24—6 of the School Code providing for sick leave, however, has used the narrower term "personal illness" in defining those benefited by that section. Although the difference in the language used indicates an intention on the part of the General Assembly to extend the benefits of section 24—6 to a more narrowly defined group than those covered under section 24—13 and section 10—22.4, this difference is not dispositive if it can be said that the term "personal illness" also encompasses pregnancy and childbirth.

In the absence of statutory definitions indicating a different legislative intent, it is assumed that words used in the statute were intended to have their ordinary and popularly understood meaning. (*Farrand Coal Co. v. Halpin* (1957), 10 Ill. 2d 507, 510; *Bowman v. Armour & Co.* (1959), 17 Ill. 2d 43, 52.) In ascertaining the ordinary and popularly understood meaning of words used in the statutes, this court has found the dictionary definitions helpful, as indicated in the two cases last cited. In Webster's Third New International Dictionary 1127 (1971), the word "illness" is defined as "an unhealthy condition of the body or mind: malady." It appears that this court has not considered whether pregnancy and childbirth is an illness or constitutes an unhealthy condition of the body. Other jurisdictions, however, have considered this question and related ones in similar situations.

In *In re Appeal of School District* (1943), 347 Pa. 418, 32 A.2d 565, cited above, the Pennsylvania Supreme Court held that an employee of a school district who was

absent from work because of pregnancy was not prevented by *sickness* or some other unavoidable circumstances from performing her duties. In *Tawney v. Board of Education* (S.D. W. Va. 1977), 426 F. Supp. 528, the court held that pregnancy and childbirth were not *sicknesses* within the meaning of the West Virginia statute. In *Gilbert v. General Electric Co.* (E.D. Va. 1974), 375 F. Supp. 367, *rev'd* (1976), 429 U.S. 125, 50 L. Ed. 2d 343, 97 S. Ct. 401, the district court found that pregnancy is not a *disease* as that term is commonly understood. Thus, the employee was excluded from sickness and accident benefits because of a pregnancy disability. Although the Supreme Court decision in that case reversed the district court, it, nonetheless, acknowledged the finding of the lower court that pregnancy is not a *disease*. In *Southern Bell Telephone & Telegraph Co. v. Administrator, Division of Employment Security* (La. App. 1967), 197 So. 2d 169, 171, the court stated: "Neither do we consider pregnancy to be an *'illness'*." (Emphasis added.) The Florida Supreme Court in *National Council of the Knights & Ladies of Security v. Glenn* (1918), 76 Fla. 592, 594, 80 So. 516, held that the following jury instruction correctly stated the law: " '*** [P]regnancy is not a *personal ailment* or condition of bad or *unsound health* so as to violate an agreement *** that a member of a beneficiary society shall not be reinstated after suspension for non-payment of dues, unless such member is in *good health* at the time of the reinstatement.' " (Emphasis added.) In *Mutual Benefit Health & Accident Ass'n v. United Casualty Co.* (1st Cir. 1944), 142 F.2d 390, 394, the court stated: "The word *'sickness'* certainly does not necessarily include pregnancy." (Emphasis added.) The court was construing an insuring clause of an insurance policy which insured against loss due to expenses of hospital residence necessitated by sickness. In *Lee v. Metropolitan Life Ins. Co.* (1936), 180 S.C. 475, 483, 186 S.E. 376, 380, the court held that pregnancy was not a *disease* so as to be covered by a group

disability policy which provided that the disability be as a "result of bodily injury or disease." In *Merriman v. Grand Lodge Degree of Honor* (1906), 77 Neb. 544, 110 N.W. 302, the court held that it was not a false representation for a female applicant for insurance to sign a certificate when she was pregnant stating that she was of sound bodily health. In *Rasicot v. Royal Neighbors of America* (1910), 18 Idaho 85, 100, 108 P. 1048, 1053, the Supreme Court of Idaho stated:

> "Pregnancy is not *per se* a condition of 'unsound' health, nor is it a 'disease' or 'ailment' within the meaning of those terms used in this application and policy. \*\*\* So far as we are informed, this term [unsound health] of itself and standing alone has never been held to cover or include a case of pregnancy."

In *Sullivan v. National Casualty Co.* (1954), 283 App. Div. 516, 517, 128 N.Y.S.2d 717, 719, the court stated that pregnancy is a normal biological function and is not an *illness*. In 10 Couch on Insurance, section 41:806 (1962), it is stated:

> "The word 'sickness' does not necessarily include pregnancy, for pregnancy is not bodily injury or disease within the meaning of a policy providing for payment of disability benefits \*\*\*."

Webster's Seventh New Collegiate Dictionary gives as a second definition of "illness," "sickness." Webster's Third New International Dictionary 1127, 1365 (1971), lists "malady" as a second definition of "illness" and defines "malady" as a disease of the body resulting from impaired or defective functions. Thus, "illness," "sickness" and "disease" are all descriptive of similar or related conditions as defined in the dictionary, and the cases above cited hold that pregnancy and childbirth are not necessarily included within these definitions. The views expressed by the doctors who testified in this case agree with this conclusion.

Several of the above authorities, however, distinguish either directly or inferentially between a normal pregnancy and childbirth and a pregnancy and childbirth involving complications, indicating that while the former does not constitute a disease, sickness or illness, the latter may. (See *Sullivan v. National Casualty Co.* (1954), 283 App. Div. 516, 517-18, 128 N.Y.S.2d 717, 719; *Rasicot v. Royal Neighbors of America* (1910), 18 Idaho 85, 99-100, 108 P. 1048, 1053; *Lee v. Metropolitan Life Ins. Co.* (1936), 180 S.C. 475, 490, 186 S.E. 376, 383; *National Council of the Knights & Ladies of Security v. Glenn* (1918), 76 Fla. 592, 594, 80 So. 516; *Gilbert v. General Electric Co.* (E.D. Va. 1974), 375 F. Supp. 367, 375-76.) In 10 Couch on Insurance, section 41:806 (1962), it is stated:

> "The circumstances of the case are material and it has been held that even though an uneventful pregnancy would not be regarded as a 'sickness,' a complicated pregnancy, carrying unusual and disabling consequences, or accompanied by variations from normal limits as such limits might be viewed in a well-advised medical opinion, could be treated as a 'sickness' ***."

We thus conclude that the General Assembly did not intend to include normal pregnancy and childbirth within the sick pay coverage of section 24—6 of the School Code. The more narrow term "personal illness" was therefore used in that section, thereby distinguishing the recipients of benefits thereunder from those covered by the broader term "temporary incapacity" as used in sections 10—24.4 and 24—13 of the School Code. The latter sections were obviously intended to cover incapacities due to pregnancies in order to conform to the decisions of the Supreme Court as above indicated. However, we hold that certain complications which are variations from normal limits, as medically established, may fall within the sick leave provisions of section 24—6.

The plaintiffs rely on two 1978 Maine cases which held that teachers were entitled to use sick leave for

temporary medical disabilities associated with pregnancy and childbirth. (*Murray v. Waterville Board of Education* (Me. 1978), 390 A.2d 516; *Millinocket School Committee v. Millinocket Teachers Association* (Me. 1978), 390 A.2d 1106.) The court in *Murray* noted that the Maine statutory scheme does not define the types of disabilities for which sick leave may be granted. "With no statutory definition to guide us, we therefore turn to an analysis of the apparent purpose of providing sick leave." (*Murray v. Waterville Board of Education* (Me. 1978), 390 A.2d 516, 519.) The plaintiffs urge this court to consider the purpose of section 24—6 of the School Code and to find that reimbursement for the economic loss due to inability to teach because of pregnancy and childbirth falls within the purpose of that section. Our statute, unlike the Maine statute, however, contains a definition of who is entitled to the benefits of the sick leave provisions. As set out above, that definition does not encompass normal pregnancy and childbirth disability.

The trial court found that the district had applied its sick leave policy unevenly, and one of the justices of the appellate court cites this uneven application as a reason for allowing sick leave to the plaintiffs in this case. The other justices of the appellate court did not consider this issue to be significant. The other pregnancy cases referred to in the evidence show that sick leave was paid by the defendant school district to a teacher who had a Caesarean section, and to a teacher who was hospitalized when she started to hemorrhage during pregnancy. These cases do not demonstrate an inconsistent application of section 24—6. Payment in these cases may demonstrate the district's policy in making sick leave payments for abnormal pregnancy and childbirth situations consistent with the above authorities. In another case involving childbirth, the evidence shows that the district granted two days' leave to a husband when his wife gave birth. Whatever the reason may have been for granting sick leave in this case, it was not for personal

illness of the teacher. If the granting of sick leave in this case does not conform to the statute it does not justify the granting of sick leave to the plaintiffs and all other pregnant teachers who do not come within the requirements of section 24—6. Other alleged inconsistencies in the application of the statute involve leaves for medical reasons that did not involve pregnancy or childbirth which the district may have considered to come within the term "personal illness."

As indicated above, plaintiff Bette Winks had some complications primarily involving varicose veins. However, there is nothing in the record that shows that any of her time absent from teaching duties was attributable to this condition. She performed her normal teaching functions through December 7, 1973. She was admitted to the hospital and gave birth to her baby the next day, December 8, 1973. She was released from the hospital on December 11, 1973, and resumed her teaching duties as authorized by her doctor on January 3, 1974. She lost no time from work due to her pregnancy, and the period of time that she did not work following delivery was substantially the same as that of the other plaintiffs in this case, whose conditions were described as normal. She has not established that she has lost any working days due to her "personal illness" and therefore may not recover sick leave benefits under section 24—6 of the School Code.

For these reasons the judgments of the appellate and circuit courts are reversed.

*Judgments reversed.*

UNDERWOOD and WARD, JJ., took no part in the consideration or decision of this case.