ILLINOIS CONSOLIDATED TELEPHONE COMPANY *et al.,* Plaintiffs-Appellants, *v.* ILLINOIS FAIR EMPLOYMENT PRACTICES COMMISSION *et al.,* Defendants-Appellees.

Fifth District    No. 81-18

Opinion filed February 24, 1982.

E. Allan Kovar and Burr E. Anderson, both of Kovar & Smetana, of Chicago, and Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellant Illinois Consolidated Telephone Company.

Tara Levy and James I. Singer, both of Schuchat, Cook and Werner, of St. Louis, Missouri, for appellants Locals 399 and 702, International Brotherhood of Electrical Workers.

Donald C. Rikli, of Highland, for appellants Donna Law, Deborah Wygal, Barbara Kirbach, and Cheryl J. Pyle.

Tyrone C. Fahner, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

This appeal arises from an administrative review brought by plaintiffs, Illinois Consolidated Telephone Company and the International Brotherhood of Electrical Workers Local 399 and Local 702, seeking to set aside findings of sex discrimination entered against them by defendant, Fair Employment Practices Commission (FEPC), on April 28, 1975. On November 12, 1980, the circuit court of Montgomery County rendered its decision and order sustaining the FEPC. Plaintiffs appeal from that order.

Defendants, Cheryl J. Pyle, Deborah Wygal, Donna Law and Barbara Kirbach, allege that they were wrongfully refused benefits, pursuant to two benefit plans the company maintains, during leaves of absence resulting from pregnancy in 1972 and 1973. The plans are an accident and sickness plan and a group insurance plan. The accident and sickness plan is a noncontributory income continuation plan in event of nonoccupational disability arising from sickness or injury. Absence from work occasioned by pregnancy was explicitly excluded from coverage. This plan was set forth in the collective bargaining agreement between the company and the representative union. Local 399 (IBEW) was the certified bargaining representative until November 15, 1972, when they were succeeded by Local 702 (IBEW). The group insurance plan is a contributory plan which provides coverage for hospital, surgical, X-ray, laboratory and related expenses. A $300 maternity benefit is available under the plan if the employee is married, has purchased spouse coverage, and such coverage is in effect at the time of conception. The plan is not part of the collective bargaining agreement.

Although the actions of the four defendants were consolidated for hearing, the factual situations are different. Defendant Pyle was employed by the company from September 1970 until August 1972. During this period she was not married. She took a leave of absence from March 5, 1972, to May 8, 1972, during which time she gave birth to a child. Pyle received no benefits from the company's plans. Defendant Wygal began employment with the company on August 14, 1969, and was so employed at the time of the hearing. She was married, but did not purchase spouse coverage under the group insurance plan. She took a leave of absence from October 24, 1971, until March 6, 1972, during which time she gave birth to a child. Like Pyle, Wygal received no benefits from the company's plans. Defendant Law began employment with the company on March 31, 1970, and was so employed at the time of the hearing. She was married and had purchased spouse coverage under the group insurance plan for her husband; however, she was divorced in October 1971 and cancelled his coverage. She took a leave of absence from September 6, 1972, until October 9, 1972, during which time she gave birth to a child. She received no benefits. Defendant Kirbach began employment with the

company on July 5, 1968, and was so employed at the time of the hearing. She was married and had purchased spouse coverage. She took a leave of absence from March 18, 1973, until May 27, 1973, during which time she gave birth to a child. She received the maternity benefit of $300, the maximum allowable pregnancy benefit under the group insurance plan. Kirbach's leave of absence was after Local 702 (IBEW) had succeeded Local 399 (IBEW) as the certified bargaining representative.

Following the leaves of absence, the individual defendants filed claims against the company and the representative unions with the FEPC, alleging sex discrimination pursuant to section 3(a) and 3(c) of the Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 853(a), (c)), for the denial of benefits under the company's plans. The FEPC substantially adopted the recommendations of the hearing examiner who found that the failure to include coverage for pregnancy-caused absence from work in the accident and sickness plan and the failure to provide benefits above a certain maximum maternity benefit in the group insurance plan, violated the Fair Employment Practices Act. (Ill. Rev. Stat. 1973, ch. 48, par. 851 *et seq.*) The FEPC thereafter ordered the company and Local 399 each to pay Pyle, Wygal and Law one-half of the benefits to which they would have been entitled under both plans had pregnancy been treated the same as any other temporary disability. The company and Local 702 were each ordered to pay Kirbach one-half of the benefits she would have received under the group insurance plan less the $300 already paid. The company was ordered to pay the entire benefit under the accident and sickness.

The company and the unions sought review of the FEPC's decision in the circuit court of Coles County. The petitions for review were consolidated, and upon motion filed by defendants, venue was transferred to the circuit court of Montgomery County. A motion filed by the company for transfer of venue back to Coles County was denied. On November 12, 1980, the circuit court of Montgomery County rendered a decision and order sustaining the order of the FEPC. Plaintiffs now take this appeal.

Sections 853(a) and (c) of the FEPA provide:
"It is an unfair employment practice:
(a) For any employer, because of the race, color, religion, sex, national origin or ancestry of an individual to refuse to hire, to segregate, or otherwise to discriminate against such individual with respect to hire, selection and training for apprenticeship in any trade or craft, tenure, terms or conditions of employment; or
\* \* \*
(c) For any labor organization because of the race, color, religion, sex, national origin or ancestry of any person to discrimi-

nate against such person, or to limit, segregate or classify its membership with respect to such person, or to limit such person's employment opportunities, such person's selection and training for apprenticeship in any trade or craft, or otherwise to take, or fail to take, any action which affects adversely such person's status as an employee or as an applicant for employment or as an apprentice, or as an applicant for employment or as an apprentice, or as an applicant for apprenticeships, or such person's wages, tenure, hours of employment or apprenticeships conditions * * *." Ill. Rev. Stat. 1973, ch. 38, par. 853(a), (c).

Plaintiffs' primary argument on appeal is that the trial court erred in finding that the decision of the Illinois Supreme Court in *Illinois Bell Telephone Co. v. Fair Employment Practices Com.* (1980), 81 Ill. 2d 136, 407 N.E.2d 539, was not dispositive of the instant case. *Illinois Bell Telephone Co.* is factually similar to the instant case. It involved a refusal, on the part of the company, to extend benefits under an accident and sickness plan for leaves of absence resulting from pregnancy in 1972 and 1973. The four women employees who were denied benefits brought actions for sex discrimination pursuant to section 3(a) of the Fair Employment Practices Act (FEPA) (Ill. Rev. Stat. 1973, ch. 48, par. 853(a)).

In *Illinois Bell Telephone Co.* the actual written plan was not included in the record, but according to the stipulation filed by the parties it operated as a disability plan for employees for periods of absence resulting from "medically approved sicknesses" and "off-the-job injuries." The plan excluded pregnancy from coverage but did include complications arising from pregnancy.

In its analysis in *Illinois Bell Telephone Co.*, the supreme court noted that "[w]here a claim of discrimination is made, an initial inquiry is whether the party claiming discrimination is similarly situated with those said to be receiving preferential treatment. [Citations.] If the complaining party is not similarly situated with whom he or she seeks to be compared, a vital prerequisite to a finding of discrimination is lacking." (81 Ill. 2d 136, 140, 407 N.E.2d 539, 541.) In determining whether the parties in *Illinois Bell Telephone Co.* were similarly situated, the court examined the purpose of the plan and found it was intended to provide benefits for "medically approved sickness" and "off-the-job injuries." Relying on its decision in *Winks v. Board of Education* (1979), 78 Ill. 2d 128, 398 N.E.2d 823, the court held that pregnancy is not a sickness and that, "[i]t was therefore improper for the FEPC to compare pregnancy with the sicknesses covered by the plan." 81 Ill. 2d 136, 141, 407 N.E.2d 539, 541.

Defendants argue, and the trial court found, that the facts in the instant case "more closely resemble" those in *Minnesota Mining & Manufacturing Co. v. State* (Minn. 1979), 289 N.W.2d 396, *appeal dismissed*

(1980), 444 U.S. 1041, 62 L. Ed. 726, 100 S. Ct. 725; and *Massachusetts Electric Co. v. Massachusetts Commission Against Discrimination* (1978), 375 Mass. 160, 375 N.E.2d 1192. These cases stand for the proposition that a comprehensive disability plan which inexplicably excludes pregnancy constitutes sex discrimination. The Supreme Court, in *Illinois Bell Telephone Co.*, when confronted with the same argument, found these cases distinguishable in that they involved disability plans of broader coverage whereas the plan in Illinois Bell only purported to cover sickness.

■■ A review of the sickness and accident plan in the instant case reveals that it is strikingly similar to the plan in *Illinois Bell Telephone Co.* The purpose of the plan is to provide a noncontributory income continuation benefit when an employee is unable to work because of a "non-occupational accident or sickness." The only arguable distinction between the plans involves coverage for complications arising from pregnancy. It is apparent from the stipulation in *Illinois Bell Telephone Co.* that the plan explicitly included complications arising from pregnancy whereas no such explicit inclusion is present in the instant case. Plaintiffs' counsel, on oral argument, stated that the plan covers complications resulting from pregnancy because this would fall within the definition of sickness. The four women involved in this litigation had normal pregnancies free from complications; thus, because a controversy never arose, we can not speculate as to what the coverage would have been. Therefore, the decision of the Supreme Court in *Illinois Bell Telephone Co.* is dispositive of the issues in the instant case regarding the accident and sickness plan. Specifically, we find that the plan was not discriminatory in that it was a noncomprehensive plan designed to cover "sickness" which could properly exclude pregnancy from coverage.

A question remains as to whether the group insurance plan discriminates on the basis of sex in violation of section 3(a) and 3(c) of the FEPA. (Ill. Rev. Stat. 1973, ch. 48, par. 853(a), (c).) This contributory plan provides group life, hospital, surgical, X-ray and laboratory, and major medical expense insurance.

The hospital, surgical and major medical plan provides benefits when a "non-occupational accident or sickness, other than pregnancy, results in hospital confinement." Thus, as in *Illinois Bell Telephone Co.*, the group insurance plan in the instant case could properly exclude pregnancy from coverage. However, the plan does provide for a limited ($300) maternity benefit if certain conditions are met. The employee must be married, have enrolled the spouse in the plan and be covered at the time of conception. The maternity benefit extended to nine months following termination of employment, provided benefits would have

been payable had employment continued. The trial court found the group insurance plan to be discriminatory for two reasons:

"(1) The $300 limitation only applies to disabilities related to pregnancy; only females can have pregnancy related disabilities; the $300 limitation is sex discrimination because it is imposed in cases of female disabilities;

(2) Only pregnancy related disabilities require spousal enrollment for receipt of benefits; pregnancy is a disability limited to females; thus the plan is sex discriminatory because it requires spousal enrollment only in cases of disabilities limited to females."

■■ After review of the group insurance plan, we conclude that it does discriminate between married and unmarried female employees, but this is not sex discrimination. The limited maternity benefit is provided for both married female and male employees who enroll their spouses. A male employee who is married, enrolls his spouse and is covered at the time of conception, is eligible for the maternity benefit. Although this would more appropriately be denoted a "paternity" benefit, it is not discriminatory on the basis of sex in that male and female employees are treated equally.

Plaintiff company also contends that the trial court erred in granting defendants' motions for transfer of venue and that plaintiffs' subsequent motion for retransfer of venue was erroneously denied. Having otherwise disposed of this case, we find it unnecessary to reach that issue.

The judgment of the circuit court of Montgomery County is reversed.


Reversed.


KASSERMAN and JONES, JJ., concur.